COCA COLA BOTTLING COMPANY, Appellant,

v.

H. M. MITCHELL, Appellee.

No. 271.

Court of Civil Appeals of Texas.

Corpus Christi.

Dec. 28, 1967.

Rehearing Denied Jan. 25, 1968.

Thomas G. Sharpe, Jr., of Hardy & Sharpe, Brownsville, for appellant.

Gordon L. Briscoe, of Carter, Stiernberg, Skaggs & Koppel, Harlingen, for appellee.

## OPINION

NYE, Justice.

The plaintiff H. M. Mitchell, filed suit against the Coca Cola Bottling Company for personal injuries resulting from the ingestion of glass when he drank a bottle of Coca Cola in Harlingen, Texas. The case was tried before the court and jury, resulting in a judgment for the plaintiff. Defendant Coca Cola Bottling Company perfects its appeal.

Plaintiff alleged that while drinking one of appellant's Cokes at his place of work he felt an unusual pain in his throat. He gagged and coughed, and in so doing discovered that the bottle from which he had been drinking contained glass particles, some of which he had swallowed. Plaintiff further alleged that immediately following his drinking from this bottle he coughed up several pieces of glass, and that as a result of having swallowed these particles of glass, plaintiff suffered severe and permanent damage to his throat.

The case was submitted to the jury on special issues after a rather lengthy trial. In response to these issues, the jury found that plaintiff Mitchell sustained personal injuries as a proximate result of having swallowed particles of glass contained in a bottle of Coca Cola bottled by the appellant and delivered by them to plaintiff's place of employment. The jury further found that the bottle of Coca Cola in question contained the particles of glass at the time it was delivered to Mitchell's place of employment, and that such particles of glass rendered the Coca Cola unfit for human consumption. These findings by the jury are supported by evidence and the appellant does not attack these findings in any points of error. The jury awarded Mitchell $3300.00 to compensate him for physical pain and mental suffering from the date of the accident to the time of trial; $3,000.00 for future pain and mental anguish; $136.-00 for doctor bills and $2,400.00 for future medical expenses.

Appellant's point of error No. 2 complains that the trial court erred in allowing Dr. M. P. Palmer to testify for the plaintiff. This the appellant claims, came as a surprise, because the witness had not been previously disclosed by the plaintiff pursuant to an interrogatory inquiring of what doctors the plaintiff had seen since the date of the accident. The defendant by written interrogatories on May 14, 1965 inquired of the plaintiff, among other things as to: "Any of the doctors you have seen since August 8, 1963 in regard to the injury you claim you sustained on August 8, 1963? Give the names and addresses?" The plaintiff answered the interrogatory a few days later naming Dr. E. G. Ashcraft and Dr. T. G. LaMotte, giving their addresses. These were the only doctors the plaintiff had seen at the time the interrogatories were served upon him. On January 19, 1966 the defendant took plaintiff's deposition during which time it was developed that plaintiff had seen not only Dr.

Ashcraft and Dr. LaMotte, but also a Dr. Shaffer, all of Harlingen, Texas. At the time of the taking of this deposition, it was further developed that Dr. LaMotte and Dr. Shaffer had died, leaving only Dr. Ashcraft who had examined the plaintiff for the injury claimed. The trial commenced on March 14, 1966. Two days prior to the trial, however, the plaintiff was examined by a throat specialist, Dr. M. P. Palmer, for the first time. Dr. Palmer advised plaintiff's attorneys as to his opinion of plaintiff's throat. On the third day of trial Dr. Palmer was called by plaintiff's attorney as their witness, whereupon the defendant moved to exclude the doctor's testimony or in the alternative for a continuance of the trial because he was surprised and that the plaintiff had not advised the defendant that Dr. Palmer was one of the doctors who had examined the plaintiff. Appellant's attorney in arguing to the court outside the presence of the jury stated that a continuance would be necessary for the purpose of fair play and justice and that if, however, the court was going to permit Dr. Palmer to testify, the plaintiff should make available to the defendant "all memoranda, reports and/or x-rays of Dr. Palmer," and further Dr. Palmer's testimony should be limited to exclude any history that may have been related to him by the plaintiff. The thrust of appellant's argument was that once you ask a question by way of interrogatory (Rule 168, Texas Rules of Civil Procedure) such question is a continuing one that must be answered truthfully from the time it is served upon the party until the trial has been concluded. The trial court in considering the defendant's motion, ruled that Dr. Palmer could testify, but would not be permitted to relate any history given to him by the patient. At the same time, the court granted the defendant a limited continuance, stating that: "the Defendant will be given as much as a day's time, if necessary, to examine the testimony of Dr. Palmer for purpose of submitting additional or contrary medical evidence as to what he testifies to and (the Court) will require

Dr. Palmer to remain available for recall, for additional examination throughout the trial." The record shows that Dr. Palmer's records were made available to the defendant. Dr. Palmer's testimony consisted of 32 pages on direct examination by plaintiff's attorneys, and 33 pages of cross examination by defendant's attorney.

The appellant argues here that Rule 168, T.R.C.P., which became effective September 1, 1962 was adopted from Rule 33, Fed.Rules of Civ.Proc. with minor procedural changes; that under the Federal rule parties to a lawsuit are under a moral duty to disclose any evidence where former answers given to interrogatories are incomplete or misleading. Plaintiff cites a number of Federal District Court decisions which hold, at least in some districts, that Federal Rule 33 makes the original interrogatory a continuing one, requiring the party upon whom the interrogatories are served to continue to furnish information as to that which was inquired about up to and including the time of trial. No Texas decisions are cited by appellant in support of this contention. Texas Rule 168 states:

> "At any time after a party has made appearance in the cause, or time therefor has elapsed, any other party may serve upon such party written interrogatories to be answered by the party served * * * *who shall furnish such information as is available to the party. * * **" (Emphasis supplied.)

We believe that Rule 168 T.R.C.P. contemplates that one set of answers shall be prepared and served by the answering party within a time certain as specified by the asking party, as the following language from the rule clearly indicates:

> "* * * the party upon whom the interrogatories have been served shall serve a copy of the answers on the party submitting the interrogatories within the time specified by the party serving the interrogatories which specified time shall not be less than 15 days after the service of the interrogatories, unless the court, on

motion and notice and for good cause shown, enlarges or shortens the time. * * * "

■ There is a comprehensive annotation, commentary, historical note and comparison of the Texas Rule 168 to the Federal Rule 33 immediately following the rule itself in Vol. 2 of Vernon's T.R.C.P., beginning on page 166 and through page 169. A careful examination of the reference material and author's comments under this Rule does not indicate to us that this rule has ever been construed by anyone or by any court of this state to require that such an interrogatory be of a continuing nature. We believe the rule as written requires answers of facts that exist at the time specified. In the interest of justice and fair play, the asking party may update his request for information subsequently if he desires. Justice Norvell of the Texas Supreme Court, in discussing the relative merits of the Federal Rules to the State Rules, and in construing Rule 167 relative to discovery said:

"The question here involves the application of Rule 167 as written, and not the relative merits of the Federal Rule as opposed to the State Rule. No argument however persuasive as to the superiority of the Federal practice from the standpoint of fairness and justice can justify our destruction of a plainly written proviso under the guise of judicial interpretation." Ex parte Ladon, 160 Tex. 7, 325 S.W.2d 121, at 124 (Tex.Sup.1959).

Certainly the rule (168) does not in express language require that the interrogatories be continuing.

The record indicates that both parties announced "ready for trial". If appellant was concerned about the continuing effect of the interrogatories, he could have made inquiry at that time. The trial court has broad discretion in the conduct of the trial. Looney v. Traders & General Ins. Co., 231 S.W.2d 735 (Tex.Civ.App.—Ft. Worth 1950, wr.ref.) We do not find that the court abused its discretion, nor do we find that there was any bad faith on behalf of the appellee in respect to the calling of Dr. Palmer in view of the fact that he had only seen the plaintiff two days prior to trial and the court gave the defendant additional time to counter the doctor's testimony. Even under the Federal practice where a United States District Court's pretrial rules required both parties to furnish to their adversaries names of all witnesses known or expected to be used before trial, the Court of Appeals for the Fifth Circuit held that the trial court committed no abuse of discretion in permitting a doctor whose name had not been so furnished to testify as an expert witness for the plaintiff where it was not known that the doctor would testify until a few days before trial when he examined the plaintiff. Texas & Pac. Ry. Co. v. Buckles, et al., 5th Cir., 232 F.2d 257, 260. Appellant's point is overruled.

Appellant's first point of error is that the trial court erred in failing to grant a new trial because one of the jurors was unable to read and write and that no exception to this qualification existed in Cameron County. Defendant furnished an affidavit from the district clerk to the effect that the requisite number of jurors able to read and write were available. Article 2133, Vernon's Ann.Tex.Rev.Civ.Stat., sets up certain qualifications of jurors. One of these apparently may be waived under certain circumstances, as it reads as follows:

"3. He must be able to read and write, except as otherwise provided herein. * * *

"Whenever it shall be made to appear to the Court that the requisite number of jurors able to read and write cannot be found within the County, the Court may dispense with the exception provided for in the third subdivision; * * *."

In Cameron County the statutory qualification requirements of Article 2133, Tex. Rev., Civ.Stat.Ann. are conducted by a dis-

trict judge when the jurors are pooled in the central jury room. Whether this particular question was asked by the presiding judge is not apparent from the record. Upon qualification of the jurors they are broken down into panels and are assigned to each of the respective courts where different cases are to be tried. The jurors in this case were qualified in the manner above described. One of the jurors, Rodolfo Cortinas, was selected to serve on this jury. The appellant's attorney conducted a voir dire examination of the jury panel prior to trial and raised no objection as to the juror's qualification. At or about the time the jury was reaching its verdict, the defendant filed a motion for mistrial and four jurors were extensively examined, including Cortinas. In fact Cortinas was examined on two different occasions (the other on motion for new trial) all of which comprised 32 typewritten pages, all done in English without the aid of an interpreter. At no time did the juror admit that he was unable to read and write at all, although his ability was undoubtedly limited. On examination, Cortinas admitted that he did not understand English "too well". He did testify that he could read English "just a little bit". On another occasion the witness testified "I don't know how to read very good." On cross-examination by appellant's attorney the witness testified in response to the question "When you were asked the question 'Are you able to read or write the English language' what answer did you give?" Answer: "They didn't ask me that question to me."

■ The reason for challenge "That a juror cannot read and write" may be waived. Renfro v. State, 156 Tex.Cr.R. 400, 242 S.W.2d 772 (Tex.Crim.App.1951). The Court of Criminal Appeals has also held that where a juror who had served that could not read or write, and had not been questioned on this particular qualification, the same would be deemed as waived. McGrew v. State, 269 S.W.2d 381 (Tex.Crim.App.1954). In the case of San

Antonio & A. P. Ry. Co. v. Gray, 66 S.W. 229 (Tex.Civ.App.—1901) the Court held that where the defendant failed to question a juror with reference to his ability to read or write, the discovery at trial that he could not read or write or understand the English language is not sufficient grounds for setting aside the verdict. In DeArman v. State, 80 Tex.Cr.R. 147, 189 S.W. 145 (1916), the Court said:

> "The only other question raised in the record before us is that the juror J. W. Glaze, who served as one of the jurors in this case, could not read nor write. We might pass this off by stating that the juror swears no such question was asked him on his examination."

Although the court held that where it was not shown that the requisite number of jurors could be found in the county, the defendant had waived the qualification, it is clear that where the question was not asked, it was waived. This is not such a qualification under Article 2133, V.A.C.S. that can't be waived or would make the trial void as a matter of law. The juror did express an understanding of the English language and we hold that under the circumstances he was qualified. In any event appellant's objection comes too late and the appellant has failed to show that harm probably resulted. Rule 434, T.R.C. P. We hold that this point of error is without merit and is overruled.

■ Appellant's third point is that the trial court erred in failing to instruct the jury just prior to the time they retired for the night, and as a consequence the foreman of the jury took the charge and special issues home with him. This point is overruled. The jury foreman was called as a witness to testify on appellant's motion for mistrial. The trial court at the conclusion of the cross examination of the jury foreman asked this question of the juror:

> "* * * I believe when you were first given the charge, after the termination of the argument, you were advised by

the court that you could have lunch and then go back to the jury deliberating room, and that the charge would be there with the exhibits; and the court told you at that time that, if you had not completed your duties you were free to separate and that you could take this charge with you?"

Answer: "Yes, sir, that is correct."

Question: "And that is what you did do?"

Answer: "Yes, sir."

Question: "And that there was no alteration to this charge whatsoever while it was in your custody."

Answer: "That is correct."

It was further brought out that an oral instruction was given by the court as well as the written charge that preceded the special issues. In addition, the district judge impanelling the jury gave each juror a written set of instructions. These instructions were made a part of the record. An examination of the same by us shows that they are very much like those used for many years by the courts of the state and have been approved in decided cases. Essentially they are the same that are discussed by Justice Jack Pope in "The Judge-Jury Relationship" article, Southwestern Law Journal, Vol. 18, page 46 and following. This point is overruled.

■ Appellant's fourth point is that the trial court erred in not granting a mistrial because the word "insurance" was mentioned during deliberations on the damages that were awarded to plaintiff. We have read the rather voluminous record concerning the examination of four jurors on the occasion of the hearing on the motion for mistrial and the re-examination of juror Cortinas on the occasion of the hearing on the motion for new trial. We find that there is a conflict in the testimony as to the misconduct alleged by the appellant. Appellant contends that in his motion for new trial that the trial court further erred

in refusing to permit him to re-examine one of the same jurors again, because he had affidavits attached to his motion for new trial. The motion for new trial exhibits only one·juror affidavit and that is of juror Cortinas and the trial court permitted Cortinas to testify at great length. The other jurors were examined during appellant's motion for mistrial for the same asserted ground of error. Nothing new was alleged or supported by affidavit. Under these facts there was no error. The effect of the testimony from the jurors was that the word "insurance" had been mentioned and was promptly followed by rebuke from the foreman of the jury. This would not constitute error. Other testimony concerning the mentioning of insurance was conflicting as to whether or not misconduct occurred. The trial court overruled appellant's motion for new trial on the ground of jury misconduct. No express findings were requested or filed. When this is the case it is presumed on appeal that the trial court found all controverted facts in support of its judgment overruling the motion and that no misconduct occurred. Brawley v. Bowen, 387 S. W.2d 383 (Tex.Sup.1965); Prasek v. Dudley, 395 S.W.2d 876 (Tex.Civ.App.—Corpus Christi 1965); Putman v. Lazarus, 156 Tex. 154, 293 S.W.2d 493 (Tex.Sup.1956); Roy Jones Lumber Co. v. Murphy, 139 Tex. 478, 163 S.W.2d 644 (Tex.Comm'n App., Op. adopted 1942); Allan v. Materials Transportation Co., 372 S.W.2d 744 (Tex.Civ.App.—Corpus Christi 1963).

■ Appellant's fifth and sixth points are that the court erred in entering judgment against Thomas A. Sweeney, Jr. and Peyton F. Sweeney, individually and doing business as Coca Cola Bottling Company, a partnership; that since the plaintiff sued "Coca Cola Bottling Company" and "Coca Cola Bottling Company" answered it was error to render judgment against the individuals and partnership. The record shows that only Coca Cola Bottling Company, Inc. has perfected its appeal, its bond being signed by Thomas A. Sweeney, Jr., Presi-

**420**

dent. These points are without merit. Since defendants Thomas A. Sweeney, Jr. and Peyton F. Sweeney did not join in this appeal, and are not before this Court, appellant is in no position to complain on their behalf. If there was any error in rendering judgment against them, such error is harmless as to appellant Coca Cola Bottling Company. Rule 434, T.R.C.P.

 The judgment, however, was rendered against Coca Cola Bottling Company of Brownsville, a Texas corporation, Thomas A. Sweeney, Jr. and Peyton F. Sweeney, individually and doing business as Coca Cola Bottling Company of Brownsville, jointly and severally. The plaintiff's petition named all of the foregoing parties. The citation was served on "Coca-Cola Bottling Company" by delivering a copy to Thomas A. Sweeney, Jr., Vice President. However, both Thomas A. Sweeney, Jr. and Peyton F. Sweeney, individually, appeared and testified at the trial. Both of the individual parties testified as to their relationship as individuals, partners and as corporate officers. No objection as to their appearance was made by the defendant. In fact, the defendant in two written pleadings, stated: "To said Honorable Court: Comes now Coca-Cola Bottling Company, Peyton F. Sweeney, Thomas H. Sweeney, Jr. and Brownsville Coca Cola Bottling Company, and makes this their motion. * * *" etc. The record does not reflect that the appellant ever filed any special plea in the nature of abatement at any time during the course of the trial under the provisions of Rule 120, T.R.C.P. We therefore hold that the appearances made by the defendants were general, not only during the course of the trial but by their pleadings. They are bound by the judgment rendered by the court. These points are overruled.

Appellant's last point is that of accumulation of error which we have considered and overruled.

 Appellee by three cross-points raises a procedural question which questions the jurisdiction of this court. Appellee contends that appellant's motion for mistrial is in reality a motion for new trial and therefore by calculating the time accordingly, the defendant's appeal was not timely perfected. A motion for mistrial is not the same as a motion for new trial. These cross points are overruled. St. Louis Southwestern Railway Company v. Duke et al., Tex., 424 S.W.2d 896 (Dec. 13, 1967).

Judgment of the trial court is affirmed.

SHARPE, J., not sitting.