James P. BAILEY, Appellant,

v.

Doyle K. TUCK, Appellee.

No. 12910.

Court of Civil Appeals of Texas, Austin.

Dec. 5, 1979.

Rehearing Denied Jan. 2, 1980.

Ray Fisher, Fisher & Ashby, Austin, for appellant.

William M. Childers, Lavern Harris & Associates, Joe Grady Tuck, Kerrville, for appellee.

O'QUINN, Justice.

By this lawsuit, filed in 1973, James P. Bailey, appellant, sought dissolution of a partnership with Doyle K. Tuck, appellee, together with final settlement and accounting, and for compensatory and exemplary damages. By counterclaim, Tuck sought compensatory and exemplary damages in offset of damages claimed by Bailey.

Tuck and Bailey entered into the partnership in December of 1963 under a written agreement to acquire, develop, and subdivide for sale a tract of land situated in Bastrop County. After suit for dissolution was filed, several persons, claiming an interest in the development, intervened seeking enforcement of certain restrictions on the land and for maintenance of roads within the subdivision.

Pursuant to a jury verdict, rendered in response to special issues, the trial court entered judgment in March of 1978 that both Bailey and Tuck take nothing by their respective claims for compensatory damages. The judgment also provided for partitioning of partnership assets and for completion and improvement of roads in the development in satisfaction of claims by intervenors.

Bailey brings four points of error under which appellant attacks the jury's answer forming basis for denial by the court of recovery of compensation for services Bailey alleged he rendered the partnership, and appellant asserts further error based on two claims of jury misconduct and disqualification of one juror.

The parties have joined issue on all claims of error. We will overrule all points of error and affirm the judgment of the trial court.

The jury answered, "None," in response to special issue No. 5, inquiring ". . . what sum of money . . . would reasonably compensate . . . Bailey for performing, managing and operating responsibilities to the partnership endeavor . . ." On appeal Bailey contends that ". . . the jury verdict on Special Issue Number 5 is against the great weight and preponderance of the evidence."

█ In determining on appeal whether the evidence was sufficient, the reviewing court will ". . . consider and weigh all of the evidence in the case and . . . set aside the verdict and remand the cause for a new trial, if it . . . concludes that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust . . .. The evidence supporting the verdict is to be weighed along with the other evidence in the case, including that which is contrary to the verdict." *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). See also, Calvert: *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Texas L.Rev. 361 (1960).

Review of the evidence, as stated subsequently in summary, is made more understandable by a brief examination first of events leading to differences between the partners that resulted in final dissolution. At the outset, when the partnership was entered into, Tuck was engaged in the real estate business in Bastrop County and Bailey was employed as shop steward for the machinists' union at the Exxon Corporation refinery in Baytown. Under the written agreement the partners would ". . . share and share alike in all said expenses and, when all bills, liens, and debts have been paid, shall so share in the profits." During the early years of the partnership Tuck devoted time to planning, developing, and improving the subdivision property, but when Tuck undertook road improvements to serve the property, Bailey refused to agree to borrowing money for that purpose.

It is apparent that dispute over roads was the first of a series of disagreements between Tuck and Bailey. Bailey unilaterally assumed control of the project early in 1971 when he moved the partnership bank account from Bastrop to Baytown and refused Tuck access to the account. An audit ordered by the trial court shows that during the years Tuck handled the project, from 1964 through 1970, earnings of the partners were Tuck $7,568.28 and Bailey $5,079.00. For the year 1971 and afterwards, under Bailey's management, Tuck earned $475 and Bailey earned $7,856.50.

Evidence was adduced at trial that Bailey kept books and records, filed tax returns, performed certain banking functions, travelled extensively between Baytown, where he resided, and the subdivision property in Bastrop County, and assumed at least some sales responsibilities. An expert witness in behalf of Bailey testified that such services in his opinion were worth $1,000 per month.

There is also evidence in the record that the tax returns often were erroneous; the books were kept informally; contracts were allowed to become delinquent because of Bailey's inattention; certain unearned commissions were paid to Bailey; and certain of Bailey's personal legal debts were paid out of partnership funds. It is apparent from the record that Bailey received compensation for his efforts by way of profits from the development.

Evidence was introduced showing that Tuck was prevented by Bailey from constructing roads in the development. The record also shows that Bailey, without Tuck's acquiescence, moved the partnership bank accounts from Bastrop to Baytown and refused Tuck access to the funds. It is clear that Bailey effectively prevented Tuck from participation in the land development.

█ The evidence was sufficient to present a fact question for the jury. We conclude that the jury's determination that Bailey suffered no compensatory damage is not so against the great weight and preponderance of the evidence as to be manifestly unjust. The point of error is overruled.

Bailey also claims error of the trial court in failing to grant a new trial because of jury misconduct consisting of a statement, alleged to have been made during deliberation on special issue No. 5 to the effect that the judge would decide the amount of compensation to be awarded regardless of the jury's answer.

At hearing on motion for new trial seven former jurors were called as witnesses. Five of the seven testified on the matter of a discussion that the judge would decide the question of compensation. Three of the

five remembered some discussion, but were not able to indicate who discussed it, nor at what stage of deliberations the matter was mentioned. Two jurors did not remember such discussion at all. It is clear from the record that at least some of the jurors were confused by the distinction between *partition* of partnership property, a matter within the province of the court, and the question of *compensation*, a question of fact for the jury to determine.

The trial court found that jury misconduct had not occurred. Findings of fact and conclusions of law were not filed by the court, and the record fails to disclose that request was made for findings and conclusions.

The Supreme Court in 1965 held that on appeal, where no express findings of the trial court were filed, it will be presumed by the appellate court that the trial court found all controverted facts in support of judgment overruling motion for new trial and that no jury misconduct occurred. *Brawley v. Bowen*, 387 S.W.2d 383 (Tex. Sup.1965). This Court in 1977 applied the rule thus stated by the Supreme Court in *Forbus v. Safeway Stores, Inc.*, 547 S.W.2d 725, 726 (Tex.Civ.App. Austin 1977, no writ).

▰ In contending that jury misconduct did exist, appellant relies on the holdings in *Pryor v. New St. Anthony Hotel Co.*, 146 S.W.2d 428 (Tex.Civ.App. San Antonio 1940, writ ref'd), and *White Cabs v. Moore*, 146 Tex. 101, 203 S.W.2d 200 (1947). The distinction between these two decisions and the present case is that in both *Pryor* and *White Cabs* the fact of misconduct was conclusively shown, whereas in the present cause a conflict was shown as to whether the statement was made. Three jurors remembered some discussion, and two jurors said the statements were not made. Since the evidence offered at the hearing was conflicting as to whether misconduct occurred, the decision of the trial court on the question is binding on appeal.

▰ By the third point of error, Bailey contends that it was error not to grant a new trial ". . . because the evidence shows that one of the jurors at the trial was not a qualified juror in that he could not read, write, or understand English."

Under Article 2133, V.A.T.S., "No person shall be qualified to serve as a juror who does not possess the following qualifications: . . . 3. He must be able to read and write . . ." It is settled, however, that the disqualification may be waived and may not be urged for the first time after verdict. The rule is stated by McDonald in this language:

"A member of a panel who is disqualified to serve as a juror . . . must be challenged promptly. If the voir dire examination does not include questions reasonably calculated to uncover the disqualification . . . the challenge must be presented promptly after the facts are discovered and in any event before verdict . . . The disqualification may not for the first time be urged after verdict." 3 McDonald, *Texas Civil Practice*, Sec. 11.05 (1970).

▰ In this case, Juan Gonzales, the juror whose qualifications were challenged for the first time on motion for new trial, had stated in English on *voir dire* that he worked at the Elgin Brick Yard for 22 years, that he worked seven years for the Austin School District, that he owned his own home, and that he was not married. Not until the hearing on motion for new trial was Gonzales questioned regarding his literacy. Bailey accepted the juror after the *voir dire* examination, and, having waited until after an unfavorable verdict to challenge the juror, Bailey waived his right to complain. *Coca-Cola Bottling Company v. Mitchell*, 423 S.W.2d 413 (Tex.Civ.App. Corpus Christi 1967, no writ); *Mitchell v. Burleson*, 466 S.W.2d 646 (Tex.Civ.App. Beaumont 1971, writ ref'd n.r.e.).

Under the fourth and final point of error Bailey complains that it was error to overrule motion for new trial because there was jury misconduct in that ". . . during the jury deliberation, one of the jurors acted as an interpreter for a juror who did not understand the English language."

At the hearing it was shown that Mrs. Alejandra Campos, a juror, translated some of the special issues into Spanish at the request of Juan Gonzales in order that Gonzales might be sure that he correctly understood the issues. Appellant offers no authority in support of the contention that this action constituted jury misconduct, but seeks to compare the function of Mrs. Campos to that of employing a dictionary in the jury room to obtain definitions of words. We fail to perceive the analogy thus posed and conclude that jury misconduct did not result. The contentions made under the point of error are without merit and the point is overruled.

The judgment of the trial court is in all things affirmed.