**Arema Margaret SPELLING, Appellant,**

**v.**

**The STATE of Texas, State.**

**No. 2–91–117–CR.**

Court of Appeals of Texas,
Fort Worth.

Feb. 26, 1992.

Roxanne Robinson, Saginaw, for appellant.

Tim Curry, Crim. Dist. Atty., C. Chris Marshall, Edwin Youngblood and J. Rex Barnett, Asst. Dist. Attys., Fort Worth, for State.

Before HILL, MEYERS and DAY, JJ.

## OPINION

HILL, Justice.

Arema Margaret Spelling appeals from the jury's assessment of her punishment for the offense of murder at life imprisonment in the Texas Department of Criminal Justice, Institutional Division, and the jury's finding that she used or exhibited a deadly weapon during the murder. This cause had previously been remanded for a new hearing on punishment due to the inclusion of a parole law instruction in the court's charge in her initial trial.

Spelling urges in two points of error that the trial court erred by submitting a deadly weapon issue in its charge in violation of due process due to lack of notice and in violation of the *Ex Post Facto* Clause. She urges in a third point of error that the trial court erred by denying her motion for new trial based upon a juror's failure to disclose information during voir dire.

We affirm because Spelling received adequate notice of the State's intention to seek a deadly weapon finding; because the law as currently applied concerning the deadly weapon finding does not increase the punishment for the offense from the time that the offense was committed, therefore not being an *ex post facto* law in violation of the United States or Texas Constitution; and because we hold that the trial court did not abuse its discretion in overruling Spelling's motion for new trial because her counsel was not diligent in that he did not ask a more specific question that would likely have elicited a more accurate response than the general questions contained in the juror questionnaire answered by the members of the venire.

■ Spelling urges in point of error number one that the trial court erred by submitting a deadly weapon issue in its charge in violation of due process due to lack of notice.

Spelling's first trial for the murder of her three-month-old son was held in December 1985. At that time she was convicted by a jury of murder, and the jury assessed her punishment at seventy-five years in what was then termed the Texas Department of Corrections. This court affirmed her conviction initially upon appeal, *Spelling v. State*, 719 S.W.2d 404 (Tex.App.—Fort Worth, 1986), but following an appeal to the Texas Court of Criminal Appeals the cause was remanded to this court for a harm analysis on punishment due to an instruction on the parole law being included in the court's charge at her initial trial. *Spelling v. State*, 770 S.W.2d 571 (Tex.Crim.App.1988). This court remanded to the trial court for a new trial on punishment. *Spelling v. State*, 768 S.W.2d 949 (Tex.App.—Fort Worth 1989, pet. ref'd). Upon remand, the jury, on November 13, 1990, assessed her punishment at life in the Texas Department of Criminal Justice, Institutional Division. Additionally, the jury found that Spelling used or exhibited a deadly weapon during the commission of the offense.

Spelling was charged and convicted of murdering her son by committing an act clearly dangerous to human life, namely hitting him on the head. On appeal, she noted the indictment's failure to allege the instrument she used to commit the murder. This court overruled her point of error be-

cause of her failure to present a pretrial motion to quash the indictment. *Spelling,* 719 S.W.2d at 406–07. We also noted that she was not charged with the use of a particular deadly weapon because it was not contended that she used a deadly weapon, so that the issue was never before the jury. *Id.* at 407.

On October 31, 1990, after Spelling's initial conviction but before the new trial on punishment, the State filed its notice of intent to seek an affirmative finding of the defendant's use or exhibition of a deadly weapon, and on November 1, 1990, mailed the notice to counsel for Spelling. Trial began on November 12, 1990.

Spelling contends that the State's notice was untimely because it was filed after her conviction. We will first address when a defendant is entitled to receive notice of the State's intention to seek a deadly weapon finding. We note that the Texas Court of Criminal Appeals has stated that if the jury determines the deadly weapon question by means of a "special issue," it is the better practice, where the jury assesses punishment, to submit the issue at the punishment stage of the proceeding. *See Polk v. State,* 693 S.W.2d 391 (Tex.Crim.App. 1985). Because the State mailed Spelling a notice on November 1, 1990, and the punishment hearing did not begin until November 12, 1990, Spelling had adequate notice of the State's intention to seek a deadly weapon finding.

Spelling relies on the case of *Speering v. State,* 763 S.W.2d 801, 808 (Tex.App.—Texarkana 1988, judgment reformed at 797 S.W.2d 36 (Tex.Crim.App.1990)) as authority for her position that the notice at the conclusion of the guilt-innocence phase of trial is not sufficient. We first note that the Texas Court of Criminal Appeals reformed the judgment in that case, holding that the indictment in *Speering* was sufficient to give notice of the State's intention to seek a deadly weapon finding where it alleged that the death was caused by a named weapon or instrument. *Speering,* 797 S.W.2d at 37. Although no weapon was alleged in the indictment in this case, we find *Speering* to be distinguishable because the punishment hearing in *Speering* was apparently held immediately after the determination of guilt or innocence, so that the defense was given no notice until just before the hearing, whereas in this case the defense would have had several days notice of the State's intention to seek the deadly weapon finding. We overrule point of error number one.

■ Spelling urges in point of error number two that the trial court erred by submitting a deadly weapon issue in its charge in violation of the *Ex Post Facto* Clause, thereby violating due process.

Spelling asserts that the submission of a deadly weapon finding violates the *Ex Post Facto* Clause of article I, section 16 of the Texas Constitution and violates the fundamental fairness of the Due Process Clause of article I, section 19 of the Texas Constitution and the fifth and fourteenth amendments to the United States Constitution. Her assertion is based upon the fact that the legislature, in 1987, after her commission of the offense, and after her first trial, amended article 42.18, section 8(c) to provide that a prisoner might not be released to mandatory supervision if the judgment of her conviction contains a finding of the use or exhibition of a deadly weapon. She insists that the finding affects her fundamental interest in her liberty on parole.

The core concern of the *Ex Post Facto* Clause of the United States Constitution is implicated by: 1) every law that makes an action done before the passing of the law, and which was innocent when done, criminal, and punishes such action; 2) every law that aggravates a crime, or makes it greater than it was, when committed; 3) every law that changes the punishment and inflicts a greater punishment than the law annexed to the crime when committed; and 4) every law that alters the legal rules of evidence and receives less or different testimony than the law required at the time of the commission of the offense in order to convict the offender. *Collins v. Youngblood,* 497 U.S. 37, ——, 110 S.Ct. 2715, 2719, 2724, 111 L.Ed.2d 30, 35 (1990); *Grimes v. State,* 807 S.W.2d 582, 585 (Tex. Crim.App.1991).

Article 42.18, section 8(c) of the Texas Code of Criminal Procedure providing for release of certain prisoners to mandatory supervision did not become effective until September 1, 1985. TEX.CODE CRIM.PROC. ANN. art. 42.18, sec. 8(c) (Vernon Supp. 1992). Spelling committed the murder on February 19, 1985, several months before the effective date. Consequently, at the time of the offense, Spelling was not entitled to release to mandatory supervision, because the right did not exist at that time. The prohibition of Spelling being placed on mandatory supervision because of a finding of the use or exhibition of a deadly weapon was not a greater punishment than was provided as of the time of the offense. Therefore, its application to Spelling did not violate her rights as provided by the *Ex Post Facto* Clause of the United States Constitution.

We next consider whether such an application of the law violates Spelling's rights under the Texas *Ex Post Facto* Clause, Article I, section 16 of the Texas Constitution. The Texas Court of Criminal Appeals has adopted the *Collins* standard in interpreting the term *ex post facto* in the Texas Constitution. Consequently, the prohibition of Spelling from being placed on mandatory supervision because of the deadly weapon finding does not violate her rights as provided by the *Ex Post Facto* Clause of the Texas Constitution. Spelling's discussion of due process rights stems from the alleged violation of her rights as protected by the *ex post facto* provisions of the United States and Texas Constitutions. We overrule point of error number two.

■ Spelling asserts in point of error number three that the trial court erred by denying her motion for new trial based upon a juror's failure to disclose information during voir dire. Evidence at the hearing on the motion for new trial showed that Dorothy Reid, a member of the venire, had stated to another member of the venire that she hoped that the case would not be one dealing with child abuse because she had two grandchildren who had been abused, that it had caused her some troubles later, and that she would have to give a life sentence because she felt strongly about it. Ms. Reid said nothing during the voir dire examination about what had happened to her grandchildren or its effect on her.

Despite what she told the other veniremember, Ms. Reid, in her juror information sheet, stated that neither she nor any member of her family had ever been a victim of a crime. She also gave a negative answer to a question that inquired, "Is there anything we should know that might bear on your ability to be a fair and impartial juror?"

At the hearing on the motion for new trial, Ms. Reid testified that two of her male grandchildren had been sexually abused when they were about eight or nine years of age, that they had not told anyone about it until they were adults, so that there had been no charges or trial as a result of the abuse.

During the voir dire of the jury, no one asked Ms. Reid or any of the other veniremembers whether they or anyone in their family had been the victim of violence or abuse and whether it would affect their ability to serve as a fair and impartial juror.

■ When a partial, biased, or prejudiced juror is selected without fault or lack of diligence on the part of defense counsel, who has acted in good faith upon the answers given to him during voir dire not knowing them to be inaccurate, good ground exists for a new trial. *Brandon v. State*, 599 S.W.2d 567, 577 (Tex.Crim.App. 1979), *cert. denied, judgment vacated on other grounds*, 453 U.S. 902, 101 S.Ct. 3134, 69 L.Ed.2d 988 (1981). However, defense counsel has an obligation to ask questions calculated to bring out information which might be said to indicate a juror's inability to be impartial and truthful. *De La Rosa v. State*, 658 S.W.2d 162, 164 (Tex.Crim.App.), *cert. denied*, 464 U.S. 865, 104 S.Ct. 201, 78 L.Ed.2d 175 (1983), quoting from *Jones v. State*, 596 S.W.2d 134, 137 (Tex.Crim.App. [Panel Op.] 1980). In this case Ms. Reid's answer to the question asked on the juror questionnaire concerning whether she or any member of her

family had been a victim of a crime was inaccurate. However, we feel that counsel for the defense was not diligent because he did not ask either the panel as a whole or Ms. Reid individually the more specific question of whether they could not serve as a fair and impartial juror due to violence or abuse on them or someone in their family. A more specific question would have likely produced an accurate answer from Ms. Reid. We do not think that it was reasonable for counsel to rely on the broad, general questions contained in the juror questionnaire due to the likelihood, as demonstrated here, of an inaccurate answer. We overrule point of error number three.

The judgment is affirmed.