# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-00-00734-CV

**Duane Preiss, Individually and as Next Friend of Alexis Preiss and Ronni Preiss, Minor Children, and as Representative of the Estate of Traci L. Rasmussen-Preiss, Deceased; and Shirley Rasmussen, Appellants**

**v.**

**Charles E. Moritz, M.D.; Central Texas Kidney Associates, P.A.; Wilbert Polson, M.D.; and Austin Radiological Association, P.A., Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT NO. 98-12024, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

Appellants Duane Preiss (representing his children, Alexis and Ronni Preiss, and the estate of his deceased wife, Traci L. Rasmussen-Preiss) and Shirley Rasmussen (Traci's mother) (together "Preiss"), appeal from a judgment based on a jury verdict in favor of appellees Charles Moritz, Central Texas Kidney Associates, P.A., Wilbert Polson, and Austin Radiological Association, P.A. (together "the healthcare providers"). Preiss complains on appeal that the district court erred in denying him a new trial because two unqualified jurors served on the district-court jury. We will reverse the district court's judgment and remand the case to that court.

### FACTUAL AND PROCEDURAL BACKGROUND

Preiss brought a medical-malpractice action against the healthcare providers, arguing that they were negligent in performing a kidney biopsy on Traci and that their negligence was the cause of her death. At trial, by a 10-2 vote, the jury found that any negligence of the healthcare

providers was not a cause of Traci's death, but rather her death was caused, at least in part, by her own negligence. The district court rendered judgment on the jury's verdict that Preiss take nothing. Preiss filed a motion for new trial, arguing that one of the jurors was statutorily disqualified from serving as a juror and had also committed juror misconduct. Later, the district court granted Preiss leave to file an amended motion for new trial. Preiss's amended motion was filed more than thirty days after the district-court judgment. *See* Tex. R. Civ. P. 329b(b) (stating that leave of court required to file amended motion for new trial more than thirty days after judgment ordered). The amended motion added allegations that a second jury member, Irene Olivares Garcia, was also statutorily disqualified from serving on the jury. After a hearing, the district court denied Preiss's amended motion.

Preiss then filed a "Motion to Vacate Interlocutory Judgment and to Enter Final Judgment" asserting that the district court's final judgment did not dispose of one of the healthcare providers, Central Texas Kidney Associates, P.A., thus rendering the judgment interlocutory and unappealable. *See Mafrige v. Ross*, 866 S.W.2d 590, 591 (Tex. 1993). The district court denied Preiss's motion.

Preiss originally appealed by six issues. By his second issue, Preiss argued that the district court erred in denying his motion to vacate. This Court, expressing concern that it did not have jurisdiction to hear the appeal absent a final judgment specifically disposing of all the parties in the district court, abated the appeal and remanded the cause to the district court for the entry of a final judgment disposing of all the parties. *See Preiss v. Moritz*, No. 03-00-734-CV, slip op. (Tex. App.—Austin Apr. 12, 2001) (not designated for publication) (citing Tex. R. App. P. 27.2 (appellate

2

court may allow appealed order that is not final to be modified so as to be made final)). The district court rendered an amended final judgment that disposed of all issues and all parties. Preiss then moved the district court for a new trial, seeking relief from the amended final judgment, or in the alternative, that the court reconsider his earlier amended motion for new trial. The district court denied Preiss's motion.[1] We now consider Preiss's remaining issues.

## DISCUSSION

By his first issue, Preiss argues that the district court erred in denying his motion for new trial because juror Garcia was statutorily disqualified from jury service. *See* Tex. Gov't Code Ann. § 62.102(8) (West 1998) ("A person is []qualified to serve as a petit juror [if she] . . . is not under indictment or other legal accusation of misdemeanor or felony theft or any other felony.").

When examining a trial court's action on a motion for new trial, appellate courts apply an abuse of discretion standard. "A motion for new trial is addressed to the trial court's discretion and the court's ruling on such will not be disturbed on appeal in the absence of a showing of an abuse of discretion." *Strackbein v. Prewitt*, 671 S.W.2d 37, 38 (Tex. 1984); *Jackson v. Van Winkle*, 660 S.W.2d 807, 808-09 (Tex. 1983). "It is an abuse of discretion for a trial court to rule arbitrarily, unreasonably, or without regard to guiding legal principles or to rule without supporting evidence." *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998).

---

[1] The healthcare providers argue that because Preiss's amended motion for new trial was filed more than thirty days after the district court signed the original final judgment, this Court may not consider issues raised in the amended motion. *See Kalteyer v. Sneed*, 837 S.W.2d 848, 850-51 (Tex. App.—Austin 1992, no writ); *Baker v. Wal-Mart Stores, Inc.*, 727 S.W.2d 53, 55 (Tex. App.—Beaumont 1987, no writ). The signing of the amended final judgment and the district court's overruling of Preiss's subsequent motion for new trial renders this argument moot.

3

At the time she sat on the jury, Garcia was under legal accusation of the misdemeanor offense of theft by check. Before *voir dire*, each potential juror completed a questionnaire distributed by the district clerk consisting of commonly asked *voir dire* questions. On her juror questionnaire Garcia was asked, "Have you ever been an . . . accused, or a . . . complainant, or a . . . witness in a criminal case?" She responded "NO" and was later selected as a juror. After the verdict was rendered, Preiss's counsel discovered that Garcia had the outstanding misdemeanor-theft charge. Garcia testified at the motion-for-new-trial hearing that in June 1993 she wrote a check that was returned for insufficient funds. After being notified of the problem, she returned to the store where she wrote the check and paid the amount in full. However, she received a letter from the Travis County Attorney informing her that, because of the insufficient check, she was required to attend a financial-management class or the State would file criminal charges against her. She completed the course in January 1994. Garcia testified that she submitted the proper proof of her completing the class to the county attorney. However, in July 1994, the State filed theft-by-check charges against Garcia that remained pending at the time of her jury service. A warrant for Garcia's arrest, which remained unserved, was also issued.

Initially, we note that this is not a juror-misconduct case. Garcia's statements on her juror questionnaire were truthful to the extent of her knowledge. She believed that no charges had been filed and did not learn the contrary until after her jury service. There is no evidence that Garcia intended to conceal information from the parties. Yet the fact remains that, at the time she was a juror, she was under legal accusation of misdemeanor theft and therefore not legally qualified to serve.

4

The supreme court has addressed the importance of the section 62.102 qualifications for jury service. In *Palmer Well Services, Inc. v. Mack Trucks, Inc.*, 776 S.W.2d 575 (Tex. 1989). Palmer Well Services, following a 10-2 verdict against it, discovered that a juror voting in favor of the verdict was under felony indictment. *Id.* at 576; *see* Tex. Gov't Code Ann. § 62.102(8). Palmer Well Services moved for a new trial, but the motion was overruled by the trial court. *Palmer Well Servs.*, 776 S.W.2d at 576. On appeal, the court of appeals affirmed, holding that the juror should have been excluded because of the indictment and that Palmer Well Services did not lack diligence in failing to discover the fact of the indictment earlier. *Id.* However, the court held that Palmer Well Services failed "to demonstrate that the unqualified juror's presence on the jury was a material factor which was reasonably calculated to, and probably did, cause the rendition of an improper judgment." *Id.*

The supreme court reversed the court of appeals and remanded the case to the trial court for a new trial. *Id.* at 577. In so doing, the court observed that the statutory disqualification was not discovered until after the jury's verdict was returned, the failure to discover the pending felony indictment was not due to Palmer Well Services' lack of diligence, and material injury occurs when a verdict is returned by fewer than ten qualified jurors. *Id.* Of particular concern to the court was the fact that an unqualified juror voted in favor of the verdict:

> [I]f the rules and statutes governing the qualifications of jurors and the requisites of verdicts are to have any effect, litigants similarly situated to Palmer [Well Services] must be held to have suffered material injury as a matter of law. Therefore, because this is not an instance in which a verdict could have been rendered by less than ten jurors, as a matter of law Palmer [Well Services] was materially injured by the rendition of an unfavorable verdict by less than the requisite number of qualified jurors.

5

*Id.* at 577; *accord Dunlap v. Excel Corp.*, 30 S.W.3d 427, 433 (Tex. App.—Amarillo 2000, no pet.); *see* Tex. R. Civ. P. 292 (stating that verdict may be rendered by no fewer than same ten members of original jury of twelve).

Here, it is beyond dispute that Preiss is similarly situated to Palmer Well Services. Because Garcia voted in favor of the 10-2 verdict, Preiss suffered an unfavorable verdict by fewer than ten qualified jurors. We thus must hold that Preiss was materially injured as a matter of law.

The healthcare providers do not assert that Preiss discovered the pending charges against Garcia before the jury returned its verdict. However, the healthcare providers argue that Preiss lacked diligence in discovering the disqualifying facts. The supreme court's opinion in *Palmer Well Services* provides no guidance on this issue, because Palmer Well Services' diligence was conceded before the supreme court. *See Palmer Well Servs.*, 776 S.W.2d at 576.

Before addressing Preiss's diligence, however, we must determine whether diligence matters. Put another way, the question that remains is whether the qualifications set forth in section 62.102 may be waived. *Palmer Well Services* answers this question in the affirmative. *See id.* at 576-77. The court distinguished, but did not disapprove, *De Leon v. Longoria*, 4 S.W.2d 222 (Tex. Civ. App.—San Antonio 1928, writ dism'd w.o.j.), and *Mendoza v. Varon*, 563 S.W.2d 646 (Tex. Civ. App.—Dallas 1978, writ ref'd n.r.e).

In *Mendoza*, during the trial the parties discovered that one of the jurors was subject to arrest for an alleged felony and thus disqualified to serve on the jury. *See Mendoza*, 563 S.W.2d at 648. The parties, however, agreed to proceed without discharging the disqualified juror. *Id.* The

6

court of civil appeals held, and the supreme court agreed, that the disqualification had been waived. *Id.*; *see Palmer Well Servs.*, 776 S.W.2d at 577.

In all likelihood, *De Leon* is also a waiver case but presents a somewhat different circumstance. At the time of trial, a juror was under indictment for a felony. *See De Leon*, 4 S.W.2d at 225. The court of appeals observed that "the inference from the whole record is that appellants knew of the pendency of the indictment against the juror." *Id.* The court also noted the "total absence of any evidence that appellants knew nothing of the indictment pending against the objectionable juror." *Id.* The court held:

> It is obvious, then, that by not seasonably raising the objection to the juror at a time when the trial court could and would have excused him, and allowed the parties to agree upon another, appellants waived their objection, and must be content with his participation in the deliberations and findings of his fellows.

*Id.* The supreme court, however, distinguished *De Leon* on a somewhat different basis: "In *De Leon*, although the pending felony indictment and due diligence were stipulated by the parties, a sufficient number of jurors remained that could have rendered a binding verdict." *Palmer Well Servs.*, 776 S.W.2d at 577 (citing *De Leon*, 4 S.W.2d at 224-25).

The court of criminal appeals has also considered whether service by a legally disqualified juror *ipso facto* mandates a new trial for the losing party. In *Mayo v. State*, 4 S.W.3d 9 (Tex. Crim. App. 1999), the court observed that section 62.102 applies to juries selected in both civil and criminal cases. *See id.* at 11 (citing *Cantu v. State*, 842 S.W.2d 667, 685 n.13 (Tex. Crim.

App. 1992)). The court also noted that "[t]he legislature did not mandate that any of the § 62.102 qualifications could not be waived by agreement or otherwise." *Id.* at 12.[2]

---

[2] Although the supreme court and court of criminal appeals agree that the provisions of section 62.102 apply to both civil and criminal cases and may be waived, the degree of proof necessary to demonstrate that the complainant suffered significant harm because of the unqualified juror is different. Since 1993, the code of criminal procedure has provided that

> [a] conviction *in a criminal case* may be reversed on appeal on the ground that a juror in the case was absolutely disqualified from service . . . only if . . . the disqualification was not discovered or brought to the attention of the trial court until after the verdict was entered and the defendant makes a showing of significant harm by the service of the disqualified juror.

Tex. Code Crim. Proc. Ann. art. 44.46 (West Supp. 2001) (emphasis added). This Court has observed that article 44.46 was enacted by the legislature in response to *Thomas v. State*, 796 S.W.2d 196 (Tex. Crim. App. 1990), which held that "service by an absolutely disqualified juror was an error that could not be waived and that required a new trial without a showing of harm." *Hernandez v. State*, 952 S.W.2d 59, 69 (Tex. App.—Austin 1997) (citing *Thomas*, 796 S.W.2d at 198-99) *vacated on other grounds by* 957 S.W.2d 851 (Tex. Crim. App. 1998). Thus, for the statute to have meaning, "the defendant is entitled to a new trial only if he demonstrates that the [disqualified] juror's service caused him significant harm beyond the mere fact of conviction." *Hernandez*, 952 S.W.2d at 71; *accord State v. Read*, 965 S.W.2d 74, 77 (Tex. App.—Austin 1998, no pet.). In neither *Thomas*, *Hernandez*, nor *Read* did the court discuss the juror-qualification provisions of government code section 62.102. *See Thomas*, 796 S.W.2d at 197; *Hernandez*, 952 S.W.2d at 69; *Read*, 965 S.W.2d at 76-77. In *Read*, a jury-card question asked, "Have you ever been an accused, complainant or witness in a criminal case?" *Read*, 965 S.W.2d at 76. The juror answered "No," in spite of the fact that she had been convicted for misdemeanor theft. *Id.* The juror also failed to disclose several other criminal accusations. *Id.* The trial court *granted* the defendant a new trial without making findings or stating the reasons for granting the motion. *Id.* In affirming the decision, this Court stated: "The trial court could reasonably conclude that the juror's actions caused Read significant harm within the meaning of article 44.46. The court could also conclude that the juror was guilty of misconduct warranting a new trial both under rule 21.3(d) and (g) of the Rules of Appellate Procedure [(defendant must be granted new trial when juror guilty of corrupt conduct or has engaged in such misconduct that defendant did not receive fair and impartial trial)] and in the interest of justice." *Id.* at 78.

With regard to civil cases, however, the supreme court has clearly stated that a complainant has been materially injured *as a matter of law* "by the rendition of an unfavorable verdict by less than the requisite number of qualified jurors." *Palmer Well Servs., Inc. v. Mack Trucks, Inc.*, 776 S.W.2d 575, 577 (Tex. 1989).

Because section 62.102 prescribes qualifications for jurors in civil and criminal cases and the supreme court and court of criminal appeals agree that these qualifications, in appropriate circumstances, may be waived, we hold that the participation of an unqualified juror in the jury's verdict does not automatically entitle Preiss to a new trial.

The healthcare providers assert that Preiss, by not presenting Garcia's disqualification to the district court before the jury's verdict, has waived any complaint about such disqualification. *See, e.g.*, *Bailey v. Tuck*, 591 S.W.2d 605, 608 (Tex. Civ. App.—Austin 1979, writ ref'd n.r.e.) (holding that disqualification "cannot be raised for the first time after verdict") (citing *Mitchell v. Burleson*, 466 S.W.2d 646 (Tex. Civ. App.—Beaumont 1971, writ ref'd n.r.e.); *Coca-Cola Bottling Co. v. Mitchell*, 423 S.W.2d 413 (Tex. Civ. App.—Corpus Christi 1967, no writ); 3 Roy McDonald, *Texas Civil Practice*, § 11.05 (1970)); *Mercy Hosp. v. Rios*, 776 S.W.2d 626, 628 (Tex. App.—San Antonio 1989, writ denied); *Jenkins v. Chapman*, 636 S.W.2d 238, 240 (Tex. App.—Texarkana 1982, writ dism'd w.o.j.) (citing *Bailey*, 591 S.W.2d 605).[3] However, in *Palmer Well Services*, the supreme court specifically found that "the discovery of the [juror's] pending felony indictment was not made until after the verdict was rendered." *Palmer Well Servs.*, 776 S.W.2d at 577. Thus, to the extent that there was ever an absolute requirement that a juror's disqualification be brought to the attention of the trial court before verdict, the supreme court has overruled such requirement by

---

Significantly, the legislature, in response to *Palmer Well Services*, did not amend chapter 62.102 of the government code.

[3] In *Jenkins*, however, the jury's verdict was unanimous; "[t]hus, one juror's lack of qualifications could not have materially affected the verdict." *Jenkins v. Chapman*, 636 S.W.2d 238, 240 (Tex. App.—Texarkana 1982, writ dism'd w.o.j.).

9

implication. We hold that Preiss did not waive his complaint to Garcia's qualifications by not raising the issue before verdict.

That Preiss is not barred, as a matter of law, from asserting his juror-qualification objection because it was not raised before verdict does not relieve him of his burden to exercise diligence in presenting the objection. We find nothing in *Palmer Well Services* to indicate that a delay in presenting a juror-qualification objection may not be considered in determining whether a party exercised diligence in discovering facts that would disqualify a juror and bringing those facts to the attention of the trial court. We now address Preiss's diligence.

The potential jurors received a jury questionnaire that contained general questions about matters such as their employment, family, and prior involvement in lawsuits. The questionnaire also inquired, "Have you ever been an . . . accused . . . in a criminal case?" This question invoked a response regarding the statutory qualification requiring that a juror not be under indictment or other legal accusation of misdemeanor or felony theft or any other felony. *See* Tex. Gov't Code Ann. § 62.102(8). As has been previously noted, Garcia answered this question in the negative. Copies of the completed juror questionnaires were distributed to the parties before *voir dire*.

In an affidavit in support of Preiss's motion for new trial, Preiss's trial attorney stated that he received Garcia's questionnaire before his *voir dire* examination of the jury panel and that "[t]he responses of Juror Garcia on her jury questionnaire and in open court gave me no indication of her criminal history and disqualification from jury service and left me unable to perform an effective voir dire in the trial of this case." However, during *voir dire*, Preiss asked no questions of either the panel or individual jurors concerning past criminal involvement, electing instead to rely on the

10

information provided in the questionnaires.[4]  Whether Preiss was diligent in discovering Garcia's

disqualification thus depends on the extent to which he could rely on Garcia's response to the inquiry

on her juror questionnaire.

The trial was to be centered on who was responsible for the death of Traci.  Preiss

alleged that responsibility lay with the healthcare providers.  The parties anticipated, and the district

court advised the jury panel, that the trial would consume approximately thirteen days.[5]  Before the

parties questioned the jury panel, the district court shared with the panel certain restrictions under

which the parties would labor during *voir dire*, including, *inter alia*, the following:

> Ladies and gentlemen, under the rules the attorneys for both sides are entitled to examine the jury panel, *and they have already had the benefit of the jury information cards that you have completed and left at the auditorium.  Therefore it will not be necessary for them to explore into all of the matters revealed by those cards,* but, in addition, they are entitled to inquire into your background, your experiences and similar matters, so that they may more intelligently exercise the [peremptory] challenges to which they are entitled, and to challenge members of the panel for cause.
>
> . . . .
>
> Also, *the lawyers have been given time limits for conducting this examination,* and so if I give them a time warning or a reminder about where they are in their argument, please don't think I'm scolding them in any way.  I'm not.  I'm simply letting them know how much time they have left, or something like that.

(Emphasis added.)

---

[4]  Garcia's open-court responses during *voir dire* were made following questions by the healthcare providers' attorney inquiring about bumper stickers on jurors' automobiles and family members' health and experience with physicians and hospitals.

[5]  *Voir dire* began August 7, 2000, and the jury returned its verdict on August 22.

Texas courts have rarely addressed the extent to which an attorney may rely on the information contained in juror questionnaires and when they have, they have not spoken with one voice. In *Gonzales v. State*, a questionnaire inquired, "[H]ave you ever been accused, complainant, or witness in a criminal case[?]" 3 S.W.3d 915, 916 (Tex. Crim. App. 1999). A juror who responded "no" served on the jury and it later came to light that the juror was in fact a criminal-case complainant. *See id.* The issue was not whether the juror was disqualified but whether the juror withheld information. The court of criminal appeals restated its previous holdings that counsel must be without fault or lack of diligence in seeking out a prejudiced or biased juror. *Id.* at 916-17 (citing *Brandon v. State*, 599 S.W.2d 567, 577 (Tex. Crim. App. 1979), *cert. denied, judgment vacated on other grounds*, 453 U.S. 902 (1981)). With respect to oral inquiries, counsel must ask specific questions and may not rely on broad ones. *Id*. at 917 (citing *Brandon*, 599 S.W.2d at 578). Further, after uncovering potential bias, counsel must ask follow-up questions. *Id.* (citing *Armstrong v. State*, 897 S.W.2d 361 (Tex. Crim. App. 1995)). The court continued,

> We see no reason why counsel's burden to use diligence should be any less in the case of written juror questionnaires. *Particularly* because of the nature of *written* questions, counsel should be sure to ask follow-up oral questions concerning any information on the form that counsel deems material. While a questionnaire may serve as an efficient vehicle for collecting demographic data, it is not the most reliable way to collect other types of information. Counsel should never assume that the respondents will understand each question as it was intended by counsel to be understood. As this case illustrates, written questions are by nature vulnerable to misinterpretation—even questions that appear to be subject to only one interpretation. For this reason, "diligent counsel" will not rely on written questionnaires to supply any information that counsel deems material. Counsel who does otherwise is simply not diligent.

12

> In the present case, defense counsel did not ask any oral questions in an effort to verify whether prospective jurors who returned juror questionnaires had been involved in criminal cases as that question was meant to be understood.

*Id.* If the court of criminal appeals is to be taken literally, there is no reason to ever submit juror questionnaires in advance of *voir dire*, because to be "diligent," counsel would have to reask each question.

But *Gonzales* is distinguishable from the case at hand. Apparently, in *Gonzales,* not all jurors had returned a juror questionnaire. The court found it significant that the nonresponding jurors were not asked oral questions about their involvement in criminal cases, stating that "[a]lthough appellant emphasizes the importance of this information, . . . it was apparently not important enough to seek the same information from prospective jurors who had not completed information cards." *Id.* at 917-18. Here, each prospective juror completed a questionnaire. Further, Garcia indicated by affidavit that she understood the question:

> To this day, I have never received any notice of an indictment [sic] for criminal charges regarding my bounced check or of any arrest warrants issued for me regarding this matter. My address has remained the same from 1993 to the present. So, if in fact any warrants or indictments [sic] had been issued I certainly should have received them. It was my understanding that because I completed the course, no criminal charges would be filed.
>
> In filling out my jury questionnaire where it asks if you have ever been accused or a complainant or a witness in a criminal matter I put no because it is my understanding that that is an accurate statement. Therefore, it is my understanding that at the time I served on the jury in the above case that I was not under indictment or other legal accusation for misdemeanor theft. Therefore, it is my understanding I was competent to serve on the jury.

The question clearly and unambiguously asks whether the respondent has ever been an accused, complainant, or witness in a criminal case. Where, as here, the response is an unequivocal "no," we feel it would accomplish no purpose other than delay to require counsel to reask the question of each potential juror, inquire whether the potential juror understood the question, and further inquire as to whether there was anything the potential juror wanted to add. Of equal importance, Garcia did not know that theft-by-check charges had been filed against her and was absolutely convinced that, by completing the financial-management class, she would not be subject to prosecution. No amount of questioning by counsel could have uncovered the fact that she was under accusation.

In *Spelling v. State*, a juror's answer on a questionnaire concerning whether she or any member of her family had been a victim of a crime was later found to be inaccurate. 825 S.W.2d 533, 536-37 (Tex. App.—Fort Worth 1992, no pet.). The court held that counsel had not been diligent in uncovering the false information, stating:

> [C]ounsel for the defense was not diligent because he did not ask either the panel as a whole or [the juror] individually the more specific question of whether they could not serve as a fair and impartial juror due to violence or abuse on them or someone in their family. A more specific question would have likely produced an accurate answer from [the juror].

*Id.* at 537. The issue before the court in *Spelling*, as it was in *Gonzales*, concerned the failure of the juror to fully disclose information that could reveal *bias or prejudice*, not the juror's *legal qualifications*. In both cases, the juror's legal qualifications to participate on the jury were not dependent on the accuracy of the juror's answers on the juror questionnaire.

Juror questionnaires are now generally used to augment oral *voir dire* examination.

14

> The questions posed on jury questionnaires traditionally are attributed to the trial court. The purpose of jury questionnaires is to elicit basic information, possible biases, and other problems that would otherwise be brought out during voir dire. Counsel may rely on these questionnaires to determine which questions to ask during voir dire and which jurors to strike, thus minimizing the length of voir dire. . . . Furthermore, the trial court and the attorneys can rely on information that is available only from the juror questionnaire or information cards.

*Garza v. State*, 988 S.W.2d 352, 362 (Tex. App.—Fort Worth) (Dauphinot, J., dissenting) (footnotes omitted), *rev'd*, 7 S.W.3d 164 (Tex. Crim. App. 1999); *accord Carr v. Smith*, 22 S.W.3d 128, 139 (Tex. App.—Fort Worth 2000, pet. denied) (Dauphinot, J., dissenting).[6]

In *Cuellar v. State*, after holding that an allegation of juror misconduct had been waived, Justice Yañez, taking the unusual step of writing a separate concurrence to her own opinion of the court, also commented on the purpose of juror questionnaires, noting that they are intended to elicit basic information which would otherwise have to be brought out in *voir dire*, thus minimizing the length of the process. *See Cuellar v. State*, 943 S.W.2d 487, 495 (Tex. App.—Corpus Christi 1996, pet. ref'd) (Yañez, J., concurring). Although *Cuellar* was not a juror-qualification case, Justice Yañez's observations are helpful. She concluded that

> when a potential juror answers a question on a jury card in a manner that would not arouse any reasonable suspicion that the juror might be biased or prejudiced, . . . counsel is entitled to rely on the truthfulness and accuracy of the response. In such instance, . . . counsel should not be required to inquire further into that response during voir dire in order to preserve error. To rule otherwise would undermine one of the primary purposes of the information cards.

---

[6] *Garza* and *Carr* both relate to the propriety of jury shuffles and do not address juror qualifications. *See Carr v. Smith*, 22 S.W.3d 128, 131 (Tex. App.—Fort Worth 2000, pet. denied) (citing Tex. R. Civ. P. 223); *Garza v. State*, 988 S.W.2d 352, 353 (Tex. App.—Fort Worth) (citing Tex. Code Crim. Proc. Ann. art. 35.11 (West Supp. 1999)), *rev'd*, 7 S.W.3d 164 (Tex. Crim. App. 1999).

*Id.* at 496 (footnote omitted).

We have been unable to locate any case, and have been cited to none, where a complainant's lack of diligence in discovering facts that would *statutorily disqualify* a juror from service has been discussed. The justice system's use of devices to expedite the trial of cases should not become a snare for the advocates who practice within that system. We recognize that a tension exists between the justice system's desire to advance cases with dispatch and the obligation of counsel to use diligence to uncover facts that could lead to a potential juror's disqualification.

We believe that these competing interests may be balanced on a case-by-case basis. The legislature has established certain minimum qualifications for jurors. *See* Tex. Gov't Code Ann. § 62.102 (West 1998). The supreme court has held that "the rules and statutes governing the qualifications of jurors and the requisites of [jury] verdicts" are to be given effect and that a party who suffers an adverse 10-2 verdict returned by fewer than 10 qualified jurors has suffered material injury as a matter of law. *Palmer Well Servs.*, 776 S.W.2d at 577.

In the case before us, the question posed was unambiguous, understood by Garcia, and capable of being answered "yes" or "no." The question did not inquire into the subjective state of mind of the potential jurors or address whether they could be fair and impartial, thus perhaps requiring follow-up questions. There is no reason to believe that had additional questions been asked, Garcia would have responded differently. As was within her discretion, the district court had restricted the time available to the parties for *voir dire*. Under these particular facts, we tip the balance in favor of Preiss and hold that because he was justified in relying on Garcia's juror-questionnaire response and thus satisfied his duty of diligence, the district court abused her discretion

16

in overruling his motion for new trial.  To hold otherwise would undermine the utility of juror questionnaires and unduly extend trials by requiring counsel to unnecessarily inquire into the same information that had already been disclosed.[7]  We sustain Preiss's first issue.[8]

## CONCLUSION

Because we have held that a juror who participated in the district-court verdict was not qualified to serve on the jury (a fact that was not discovered until after the verdict), that Preiss was diligent in discovering the facts forming the basis of the disqualification, and that Preiss was harmed as a matter of law when fewer than ten qualified jurors returned the verdict, we reverse the district-court judgment and remand this cause to that court for a new trial.

Lee Yeakel, Justice

Before Chief Justice Aboussie, Justices Yeakel and Patterson

Reversed and Remanded

Filed:  October 11, 2001

---

[7] We also note the importance the legislature places on the use of juror questionnaires.  As of January 1, 2001, all written jury summonses must include a juror questionnaire developed by the Office of Court Administration of the Texas Judicial System.  *See* Tex. Gov't Code Ann. § 62.0132 (West Supp. 2001); Act of May 27, 1999, 76th Leg., R.S., ch. 539, § 2(c), 1999 Tex. Gen. Laws 3035, 3036.

[8] Because we sustain Preiss's first issue, we do not address his other issues.  *See* Tex. R. App. P. 47.1.

Publish