Ignacio **HERNANDEZ**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 03–95–00696–CR.

Court of Appeals of Texas, Austin.

July 24, 1997.

Keith S. Hampton, Austin, for appellant.

Ronald Earle, District Attorney, Jonathan D. Stick, Assistant District Attorney, Austin, for state.

Before CARROLL, C.J., and ABOUSSIE and B.A. SMITH, JJ.

PER CURIAM.

A jury found appellant guilty of capital murder. Tex. Penal Code Ann. § 19.03(a)(2) (West 1994). The death penalty was not sought and the district court assessed punishment at imprisonment for life. Tex. Penal Code Ann. § 12.31(a) (West 1994); Tex.Code Crim. Proc. Ann. art. 37.071, § 1 (West Supp. 1997).

The body of Alfred Deltoro was found hanging from a tree branch on the morning of November 5, 1994. Deltoro's hands were tied behind his back and his pants had been removed. Deltoro had been beaten and kicked, but the cause of death was ligature strangulation. On November 8, the police received a tip that a man named Jose Cruz was involved in the murder. Interviewed by the police, Cruz named appellant as the murderer. Appellant was arrested for multiple traffic offenses on November 17 and, on that day, gave the police a written statement saying he was with friends at the time Deltoro was murdered. These friends did not confirm appellant's alibi. The next day, November 18, appellant was interrogated for four hours. At the conclusion of this interrogation, which was videotaped, appellant confessed that he and Cruz assaulted and robbed Deltoro, then hung him from the tree to make sure he was dead. Appellant also signed a written confession based on his oral statement.

In three points of error, appellant contends he did not knowingly and voluntarily waive his rights before making his incriminating statements to the police, and that the statements were in fact involuntary. Appellant's five remaining points are grounded on the contention that one of the jurors in this cause was absolutely disqualified from serving. We will overrule each point and affirm.

### Confessions

#### 1. Standard of review

Appellant urges that we conduct a de novo review of the admissibility of his confessions, citing *Ornelas v. United States*, 517 U.S. ——, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). In that case, the Supreme Court held that in federal prosecutions, appellate review of probable cause and reasonable suspicion questions should be conducted de novo. Nothing in the opinion suggests that this holding applies to state prosecutions.

The Court of Criminal Appeals has recently articulated the standard of review to be applied to mixed questions of law and fact:

When the courts of appeals analyze a trial court's denial of a motion to suppress

evidence they must be deferential to the trial court's judgment, not only as to the historical facts, but also as to the legal conclusions to be drawn from the historical facts—at least so long as it appears the trial court has applied the correct standard of law to those historical facts. They should reverse the trial court's decision only for an abuse of discretion; that is to say, only when it appears that the trial court applied an erroneous legal standard, or when no reasonable view of the record could support the trial court's conclusion under the correct law and the facts viewed in the light most favorable to its legal conclusion.

*DuBose v. State,* 915 S.W.2d 493, 497–98 (Tex.Crim.App.1996); *see also State v. Carter,* 915 S.W.2d 501, 504 (Tex.Crim.App. 1996). The court revisited this question in *Villarreal v. State,* 935 S.W.2d 134 (Tex. Crim.App.1996), a case producing seven opinions. The author of *DuBose* and *Carter* wrote that while those opinions "opted for a standard for review that was perhaps a little too categorical in the direction of deferential review," they continue to "make sense, at least as an articulation of a general rule of appellate review." *Id.* at 142 (Clinton, J., concurring). Three other judges reaffirmed *DuBose* and *Carter. Id.* at 140–41 (McCormick, P.J., concurring), 148 (Keller, J., concurring), & 156 (Meyers, J., dissenting). *DuBose* has not been overruled and remains the controlling precedent to be applied in this cause. *See also Dinkins v. State,* 894 S.W.2d 330, 348 (Tex.Crim.App.1995); *Alvarado v. State,* 853 S.W.2d 17, 23 (Tex.Crim.App. 1993); *Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App.1990); *Rodriguez v. State,* 939 S.W.2d 211, 215 (Tex.App.—Austin 1997, no pet.).

### 2. Waiver of rights

Appellant cannot read or speak English. The interrogation of appellant on November 18 was conducted in Spanish by Austin police officer Ernest Pedraza. The entire interrogation was videotaped, and this videotape was introduced in evidence. Also introduced was a transcription of the videotape both in Spanish and in English translation. Throughout most of the interrogation, appellant continued to assert his alibi and denied any knowledge of the murder. Eventually, however, appellant confessed his involvement in the crime, saying it had been instigated by Cruz. While the videotape continued to run, Pedraza prepared a written confession which was signed by appellant after Pedraza read it to him in Spanish. This written confession was also introduced in evidence.

■ Appellant contends the oral and written confessions do not reflect the knowing, intelligent, and voluntary waiver of his rights required by statute. Tex.Code Crim. Proc. Ann. art. 38.22, §§ 2(b), 3(a)(2) (West 1979 & Supp.1997). A knowing and voluntary waiver of rights is also constitutionally required. *Miranda v. Arizona,* 384 U.S. 436, 475, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694 (1966); U.S. Const. amends. V, XIV.[1] The State bears the burden of proving the required waivers. *Miranda,* 384 U.S. at 475, 86 S.Ct. at 1628; *Kelley v. State,* 817 S.W.2d 168, 173 (Tex. App.—Austin 1991, pet. ref'd).

■ At the start of the videotaped questioning, Pedraza advised appellant of his constitutional and statutory rights and asked him if he understood them. The transcription of the videotape indicates that appellant's response was unintelligible. Seizing on this, appellant argues that the State failed to prove that appellant understood and voluntarily waived his rights. Appellant relies on the established principle that a waiver cannot be presumed from a silent record. *Carnley v. Cochran,* 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962).

The record before us is not silent. In the transcript of the videotape, immediately after appellant's unintelligible response to Pedraza's inquiry, the officer read to appellant a printed acknowledgment and waiver of rights form and showed him where to sign "so that it will be known that you understood those" rights. Appellant then signed the form, as shown on the videotape. Pedraza testified at the hearing on the motion to suppress that he advised appellant of his rights as required

---

**1.** Appellant also cites article I, sections 10 and 19 of the Texas Constitution, but does not argue that they impose a stricter procedural burden than that imposed by article 38.22 and *Miranda.*

by law before taking the statement, and that appellant indicated that he understood them. While the quality of the videotape may have rendered appellant's oral response unintelligible, the record as a whole affirmatively supports a finding that appellant knowingly, intelligently, and voluntarily waived his rights before giving the oral statement.

■ At the conclusion of the interrogation and after typing the written confession, Pedraza read to appellant the advice of rights printed on the confession form:[2]

> OK, let me read it to you. At 7:45 in the afternoon, evening the 17th of, the 18th of November 1994 ... if before you clean this statement I, Ignacio Volano Hernandez, being in the police station ... My rights we read me by Sgt. Pedraza. I have the right to keep silent and say absolutely nothing ... Any statement that you make can be used against you in the cause in which you are accused. Any statement that you make can be used as proof against you in the Court. You have the right to keep your silences in, right, you have the right to have an attorney present to that you may be advised before or that question are asked you and during the time that questions are being asked. If you cannot employee and attorney, you have the right to have assign to you so that you may be advised before or during the time you are asked question. You have the right to finish this interview at any moment you so wish. Do I understand these rights?

Appellant answered, "Yes." Appellant characterizes Pedraza's reading of the rights form as "nonsensical" and urges that it was too far removed from the statutory requisites to be characterized as reasonable compliance with the article 38.22. Appellant adds that read literally, he acknowledged only that Pedraza understood the recited rights.

It must be remembered that the transcription reflects the product of two translations, first by Pedraza from English to Spanish and then by the interpreter from Spanish to English. Comparing Pedraza's reading of the rights form as reflected in the transcription to the rights listed in article 38.22, section 2,

we find only one notable variation from the statutory language: Pedraza told appellant he could "finish," rather than "terminate," the interview at any time. While the two words are not precise synonyms in this context, we do not believe that this single word substitution substantially altered the meaning. The district court could reasonably conclude that the advice of rights read to appellant by Pedraza was adequate to convey the meaning of article 38.22, section 2. *See Sosa v. State,* 769 S.W.2d 909, 916 (Tex.Crim.App. 1989) (substantial conformity to statutory language sufficient). Further, we believe that it is obvious from the context that appellant acknowledged his personal understanding of the rights read to him by the officer.

The district court did not abuse its discretion by concluding that appellant knowingly, intelligently, and voluntarily waived his statutory and constitutional rights before giving his oral and written confessions. Point of error six is overruled.

### 3. Voluntariness of confessions

#### a. Burden of proof

■ Appellant next contends his oral and written confessions were involuntary and hence inadmissible. U.S. Const. amends. V, XIV; Tex. Const. art. I, §§ 10, 19; Tex. Code Crim. Proc. Ann. arts. 38.21 (West 1979), 38.23 (West Supp.1997). When the voluntariness of a confession is challenged, the trial court must make an independent determination in the absence of the jury as to whether the statement was voluntarily made. *Jackson v. Denno,* 378 U.S. 368, 380, 84 S.Ct. 1774, 1782–83, 12 L.Ed.2d 908 (1964); Tex. Code Crim. Proc. Ann. art. 38.22, § 6 (West 1979). At this hearing, the State has the burden under the Fifth and Fourteenth Amendments of proving by a preponderance of the evidence that the confession was voluntary. *Lego v. Twomey,* 404 U.S. 477, 489, 92 S.Ct. 619, 626–27, 30 L.Ed.2d 618 (1972); *Alvarado v. State,* 912 S.W.2d 199, 211 (Tex. Crim.App.1995). Appellant urges that our state constitution and statutes should be read to require the State to prove voluntariness

---

**2.** We quote the transcription exactly as it appears in the record.

beyond a reasonable doubt before a confession may be admitted in evidence.

Appellant argues by analogy to *Harrell v. State*, 884 S.W.2d 154 (Tex.Crim.App.1994). In that case, the Court of Criminal Appeals addressed the standard of proof, for purposes of admissibility, applicable to extraneous offense evidence. The court noted that it has long required that a jury be instructed not to consider extraneous offense evidence unless it believes beyond a reasonable doubt that the defendant committed the extraneous offense. Believing that "it makes no sense" for the trial court to admit evidence using one standard for admissibility, but then instruct the jury not to consider that same evidence unless the proof meets a different standard, the court concluded that the standard of admissibility for extraneous offense evidence is also proof beyond a reasonable doubt. *Id.* at 158–59. Specifically, before admitting the evidence, the trial court must determine that it is sufficient to permit the jury to find beyond a reasonable doubt that the defendant committed the extraneous offense. *Id.* at 161.

Appellant points out that if an issue as to the voluntariness of a confession is raised at trial, the court must instruct the jury not to consider the confession unless it believes beyond a reasonable doubt that the confession was voluntary. *Dinkins*, 894 S.W.2d at 353; Art. 38.22, § 6. Echoing *Harrell*, appellant argues that it makes no sense to apply a lesser standard of proof to the trial court's initial voluntariness determination. *See Alvarado*, 912 S.W.2d at 226–27 (Maloney, J., concurring).

It is not clear that there is a meaningful distinction between the federal test for the admissibility of a challenged confession and the test suggested by *Harrell*. If the preponderance of the evidence proves the voluntariness of the defendant's confession (the federal test), then there must be evidence that, if believed, would support a jury finding of voluntariness beyond a reasonable doubt (*Harrell*). So that there can be no question about this matter, we will review the district court's ruling under both standards.

**b. The test for voluntariness**

■ Appellant contends his confessions were involuntary in the Fifth Amendment sense. Under the Fifth Amendment, a confession must be free and voluntary, that is, it must not be extracted by any sort of threat or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence. *Bram v. United States*, 168 U.S. 532, 542–43, 18 S.Ct. 183, 186–87, 42 L.Ed. 568 (1897). The Fifth Amendment was made applicable against the states by the Fourteenth Amendment. *Malloy v. Hogan*, 378 U.S. 1, 6, 84 S.Ct. 1489, 1492–93, 12 L.Ed.2d 653 (1964); *Roberts v. State*, 545 S.W.2d 157, 160–61 (Tex.Crim.App. 1977).[3] Appellant does not contend his confession was physically coerced, but argues that the evidence at the suppression hearing showed that Pedraza used improper promises and other inducements to persuade him to confess. To render a confession inadmissible, a promise must be positive and of some benefit to the defendant, must be made or sanctioned by a person in authority, and must be of such an influential nature as to be likely to influence the defendant to speak untruthfully. *Muniz v. State*, 851 S.W.2d 238, 254 (Tex.Crim.App.1993); *Sossamon v. State*, 816 S.W.2d 340, 345 (Tex.Crim.App. 1991). It is not disputed that Pedraza was a person in authority. Thus, the question presented is whether Pedraza made promises or used other inducements of such an influential nature as to be likely to cause appellant to speak untruthfully.

**c. The evidence in this cause**

■ "For or against." At the suppression hearing, Pedraza answered affirmatively when asked by defense counsel if he told appellant that "if he gave this statement and told the truth and told his part of it, that it could be used for him as well as against him." It is well settled that a confession is

---

**3.** Appellant does not contend that the Texas Constitution affords a criminal defendant greater protection with regard to the voluntariness of a confession. To the contrary, appellant asks this Court to hold that article I, section 10 and the Fifth Amendment are identical in this respect. While we decline to so hold, we will make that assumption for the purpose of this opinion.

inadmissible if it is shown that the person who obtained the confession told the defendant that the confession might be used "for or against" or "for and against" him. *Sterling v. State*, 800 S.W.2d 513, 518–19 (Tex. Crim.App.1990); *Dunn v. State*, 721 S.W.2d 325, 341 (Tex.Crim.App.1986). In response to later questions by the prosecutor, Pedraza denied telling appellant that "anything he said could be used for him." Appellant does not refer us to any place in the transcript of the interrogation at which the officer told appellant that any statement he made could be used "for or against" or "for and against" him. We find no such statement. The record demonstrates that no such representation was made.

In his brief, appellant also refers us to numerous passages taken from the transcription of the videotaped interrogation. Appellant argues that these passages demonstrate that Pedraza repeatedly implied that a confession could be used in appellant's favor or threatened adverse consequences if appellant failed to confess.

 **"Help yourself."** Pedraza told appellant several times during the course of the interrogation that he was giving him an opportunity to help himself. Appellant cites these examples:

- I'm not forcing you to say anything … but I will tell you something … that this crime OK? that happened … it did happen and we know who did it … uh, simply I'm am here to help you, because this is a serious killing and the only way you are going to help yourself … is … telling us to us all the truth, completely.
- [T]here are ways of how, how to get out of this … OK? Do you want to help yourself? With this offending. Do you want to help yourself? You have to talk to me, with the truth …
- So, right now you have the opportunity, right now, you have the opportunity to help you to help yourself, you yourself … no one else is going to help you … your friends there in apartment 4 aren't going to help you.

- The only person that can help you right now is you and me. That's why I'm here talking to you. I don't have to talk to you. [ … ] I have enough of-of proof, enough witnesses I don't have to [UI] to be here, but I do it just because you're Mexican, you are a fellow-countryman … I also want to help you.[4]
- I want to get all the, the information, all the facts, because that's what is going to help you.

Appellant argues that by these statements Pedraza implied that a confession could be used in appellant's favor. In evaluating this contention, we must consider the context in which the challenged statements were made. During the interrogation, Pedraza repeatedly and truthfully told appellant that Cruz's statements to the police had placed sole responsibility for the murder on appellant. According to Cruz, appellant had robbed, sexually assaulted, and murdered Deltoro. Pedraza also truthfully informed appellant that his original alibi statement had been disproved. Confronting a suspect with the evidence against him during questioning does not render the confession inadmissible. *Gonzales v. State*, 807 S.W.2d 830, 833 (Tex. App.—Houston [1st Dist.] 1991, pet. ref'd). Pedraza urged appellant not to permit Cruz to escape responsibility for his actions and to take advantage of the opportunity to tell his side of the story. In this context, the term "help yourself" was another way of urging appellant to tell his side. Fairly read, Pedraza's statements did not imply that a confession could be used to help appellant at trial. We do not believe that the admonition to "help yourself" would induce appellant to untruthfully implicate himself in a murder.

 **Lenience.** Appellant urges that the following statements by Pedraza implicitly promised lenience in exchange for a confession:

- That you're going to go to jail, but for how long, I don't know. You can go for a long time or for a little bit, that all depends on you.
- Because all [the witnesses] are going to, they're going to present you like an

---

4. "[UI]" appears in the transcription and means "unintelligible."

anianimal. Like a horrible person. . . . Better [UI] I'll go to the court and say "look Judge, I made a mistake . . . like ten mistakes" and that's finished [UI] because finally, it'll all come out the same in the end . . . or, but, they'll put a, it'll go worse for you and that I can tell you because when a person lies, you well know that it all comes out bad when you lie, it's worse always . . . no I've never seen a situation when it came out alright when there were lies.

- I want a dude to come here . . . to sit in that chair and talk to me, like a man, when they do a mistake, say yeah I made a mistake, I made a mistake and pay whatever they must pay. If they want to pay a lot or if they just want to pay a little, you know that when you lie, you pay a lot, but that dude comes here, he also lied to us . . .

- [H]e has to, everyone has to pay for what they do . . . but it depends on what, what, how much they have to pay . . .

- [T]he deal is that you all will pay . . . but how much . . . See? [A]ll, all prisons, the prisoners that are in the penance say that they are not guilty and you know why they're in the penance? Because they still don't accept their responsibility, they go before the Judge and say "No, not me, I wasn't guilty Judge." Where do you think they end up? They're in the joint . . .

- OK, if we go with everything I have, the Judge will tell you that you're guilty. OK but if you go or OK, if you tell me right now [ . . . ] he threatened me or he said something to me, those are, uh extra reasons that the Judge can take in consideration when uh, he finds you guilty . . . others, Do you understand what I'm saying to you? If there are reasons why this happened, when it happened they people see it in another way . . . Understand?

It is not impermissible to inform a defendant, as a matter of fact, that lenience is sometimes shown when a defendant confesses. *Muniz*, 851 S.W.2d at 254. None of Pedraza's statements positively or unequivocally promised lenience in return for a confession. As in the "help yourself" statements, the officer was reminding appellant of the evidence against him and telling him that only he could explain his conduct and describe the mitigating circumstances. Again, we do not believe that these statements would induce appellant to untruthfully incriminate himself.

■■■ **Judge's wrath.** Appellant contends that Pedraza went beyond promises of lenience and threatened that he would incur the wrath of the court if he did not confess:

- [I]f you don't come here uh to tell us the truth . . . OK? then it'll go bad for you in the Court because we have all of this, these proofs against you [ . . . . ]

- What do you think the Judge will say? When a person goes into his the court lying . . . believing the Judge has become an imbecile, [ . . . ] what do you think he's going to say to you?

- Put yourself in mine, in my place. You're investigating a case and you've seen and asked eight people ["]Where's Ernesto?["] and I'm telling youwell I was here and that people are saying "No, Ernesto wasn't here he was there" Who are you going to believe, huh?

 [Appellant:] I don't know, but

 I don't know, yes you do know who you'd believe, the eight people . . . you're not going to believe to me. And that's how it is going to be when you go before the Judge or before the jury . . .

- [W]hen you go in front of the court . . . you're not going to be believed [ . . . . ]

- [B]ut if you're going to go and "No, I'm not guilty, they're all liars" Everything is, it's What do you think the Judge will think? No, he's not only going to think that you're guilty but that you're an animal [ . . . . ]

These remarks contain no express or implied threats. Pedraza was again emphasizing the evidence against appellant and asking him to consider how unlikely it was that the judge or jury would believe his impeached alibi.

■■■ **Appeals to family.** Finally, appellant complains that Pedraza unfairly invoked appellant's family in the effort to coerce a confession:

- I know that you, that you uh, are real family oriented that they all love you a lot [. . . .] [A]bout your brother OK? about, What is he going to think [. . . .]

- [A]nd you know what? [W]hen he reads that, the facts from the, the court he's going to believe that you're lying . . . My brother is lying . . . What kind of person is he?

- [D]o it for your brother, your family, your sisters, do it for all of them. . . .

- [W]hat I am saying to you is think about [ . . . ] your brother [ . . . ] because when you go in front of the Court . . . OK? you're not going to be believed [. . . .]

- [W]hen we have to talk to your family [ . . . ] I want to talk to your, your brother and your family and tell them "Nacho, uh, was a person who made a mistake, he was a good man, because he voluntarily talked, he told me what he did, that he made a mistake . . . and, and, and he, he's man["] or Do you want me to talk to you family and with your brother and tell 'em "Listen, Ignacio . . . he's a common killer, a horrible person, he did this to this person, he killed him, he's worth nothing, he's not worth keeping in this world?["]

These statements contain no promise of any benefit, nor were they likely to induce appellant to falsely incriminate himself.

Unquestionably, Pedraza used all of his persuasive powers in the effort to induce appellant to confess. It is neither unconstitutional nor otherwise unlawful, however, for the police to encourage a defendant to confess. While there are limits to what a police officer may say or do in seeking a confession, the district court did not abuse its discretion by concluding that Pedraza did not exceed those limits in this cause. The district court could reasonably conclude that the preponderance of the evidence proved the voluntariness of appellant's confessions. Further, the court could reasonably conclude that the evidence was sufficient to support a finding of voluntariness beyond a reasonable doubt. Points of error seven and eight are overruled.

## Disqualified Juror

### 1. Statutory and factual background

A person who has been convicted or stands legally accused of theft or any felony, or who is insane, is absolutely disqualified from jury service and may not serve as a juror even if both parties consent. Tex.Code Crim. Proc. Ann. art. 35.16(a)(2), (3), (4), art. 35.19 (West 1989). In 1990, the Court of Criminal Appeals held that service by an absolutely disqualified juror entitled a defendant to a new trial even though the disqualification was first urged in a motion for new trial. *Thomas v. State*, 796 S.W.2d 196 (Tex.Crim.App. 1990). The court held that service by an absolutely disqualified juror was an error that could not be waived and that required a new trial without a showing of harm. *Id.* at 198–99. In 1993, the legislature enacted Code of Criminal Procedure article 44.46 in apparent response to the opinion in *Thomas*. Tex.Code Crim. Proc. Ann. art. 44.46 (West Supp.1997). This statute provides:

A conviction in a criminal case may be reversed on appeal on the ground that a juror in the case was absolutely disqualified from service under Article 35.19 of this code only if:

(1) the defendant raises the disqualification before the verdict is entered; or

(2) the disqualification was not discovered or brought to the attention of the trial court until after the verdict was entered and the defendant makes a showing of significant harm by the service of the disqualified juror.

The juror in question in this cause, Rebecca Whitman, was questioned individually during voir dire as follows:

[Prosecutor]: Ms. Whitman, we have to run checks on people because if you have been convicted of a theft you can't sit on a jury. I hate to even ask you about this, it may not even be you, but it showed there was a theft of check back in '85. Is that you?

MS. WHITMAN: I don't think so.

[Defense counsel]: You have never been convicted of that?

MS. WHITMAN: No.

[Prosecutor]: Do you live at 5900 Mojave Drive?

MS. WHITMAN: Mojave, and have for 14 years.

[Prosecutor]: They had it on here back in 1985. As far as you know, you have never been convicted?

MS. WHITMAN: No, sir.

Whitman was not challenged and was selected to serve on the jury.

Appellant filed a motion for new trial complaining that Whitman was absolutely disqualified from serving on the jury. Attached to the motion was an affidavit from Whitman saying that after trial she learned of the existence of a misdemeanor theft complaint on file in the county clerk's office. The complaint, a copy of which was also attached to the motion for new trial, alleges that she stole groceries having a value of more than $20 but less than $200 on or about September 20, 1985, ten years before appellant's trial. Whitman's affidavit continued:

I am the same person as the person named in the file. Back in the mid–1980's, I lived with Vernon Junior Barker and he had an account that I could write checks from with his name but my signature.... We had some bad times and we broke up.

About a year later, he received in the mail that he had outstanding checks and that a warrant had been issued for his arrest for hot checks written to HEB. I was living in Nashville, Tennessee with my oldest daughter at the time. He called me and asked me to come back to Austin to see the judge and help straighten things out in Vernon's case. I wrote the checks, but it was his name and he was being blamed for it.

I came back to clarify that I was the one who wrote the checks. We went to see the judge, but the judge did not believe that I wrote the checks. The judge told me that I could be prosecuted to the fullest extent of the law, and I said that I understood. He asked me if I still wanted to say that it was my handwriting, and I said yes. I'll never forget it.

He had handwriting experts come in, and put me and Vernon in separate rooms.

We wrote pages of stuff. They compared them and still did not believe that it was my signature. We went back to the judge, and the judge told us that our writing would be sent off to another expert to analyze and that we would be notified when they had reached a decision or made a determination. That was the last we heard about it.

An attached affidavit from appellant's trial counsel stated that the prosecutor "had some criminal history information on the jury venire, including a possible indication of this charge on Ms. Whitman" and that the prosecutor "shared this information with the defense prior to trial." After trial, counsel made further inquiries and discovered the pending misdemeanor theft complaint. The arrest warrant attached to the complaint had never been executed and counsel conceded, "I do not know if Ms. Whitman ever had any knowledge of the pending charge against her."

No hearing was conducted on appellant's motion for new trial, which was overruled by operation of law. Tex.R.App. P. 31(e)(3). For the purpose of this appeal, we will assume the truth of all facts stated in the supporting affidavits.

## 2. Withholding of information

 Appellant contends he was denied due process and due course of law because Whitman, during voir dire, withheld the facts showing her disqualification to serve on the jury. A juror cannot be said to have withheld information when she was not asked questions calculated to bring out that information. *Armstrong v. State,* 897 S.W.2d 361, 363–64 (Tex.Crim.App.1995); *Jones v. State,* 596 S.W.2d 134, 137 (Tex.Crim.App. 1980). During voir dire, Whitman was asked if she had been convicted of theft. She truthfully answered no. Even if we assume that Whitman should have understood the voir dire questioning to include *accusations* of theft, she cannot be said to have withheld information or given a misleading answer because she was not then aware of the theft complaint. Both Whitman and defense counsel stated in their affidavits that the theft complaint was not discovered until after ap-

pellant's trial. *See and compare Babin v. State,* 149 Tex.Crim. 339, 194 S.W.2d 563, 566 (1946), *with Von January v. State,* 576 S.W.2d 43, 45 (Tex.Crim.App.1978). Point of error three is overruled.

### 3. Service by absolutely disqualified juror

Appellant contends that the district court erred by permitting an absolutely disqualified juror to serve on the jury. The record does not demonstrate, however, that appellant raised Whitman's disqualification before verdict nor does appellant demonstrate significant harm resulting from her service as a juror. Art. 44.46.

■ Appellant seeks to avoid article 44.46(1) by asserting that the statute applies only when defense counsel alone has knowledge of the disqualification. Appellant cites no authority and offers no supporting argument for this assertion, which is contrary to the plain language of the statute. When interpreting a statute, we must give effect to the statute's plain language unless it would lead to an absurd result the legislature could not possibly have intended. *Boykin v. State,* 818 S.W.2d 782, 785 (Tex.Crim.App.1991). There is nothing absurd in interpreting article 44.46(1) as written.

It is clear from the record that the issue of Whitman's disqualification to serve was not raised by appellant before the verdict was entered. The pending theft complaint was discovered only after the trial. At the time the jury was empaneled, both the prosecution and the defense were apparently satisfied that the panelist was not the Whitman whose name had turned up in the criminal background check. While it is true that the possibility of her disqualification was raised during voir dire, appellant never asserted or even suggested that Whitman was disqualified. At the very least, article 44.46(1) requires the defense to assert in some fashion that a juror is absolutely disqualified before the verdict is entered. Appellant did not do so in this cause.

■ With regard to the article 44.46(2) harm requirement, appellant contends his conviction and sentence constitute "significant harm" as a matter of law. Once again,

appellant's contention is contrary to the plain language of the statute. The question of reversible error can arise only if a defendant is convicted and sentenced. If the mere fact of conviction were a "significant harm" within the meaning of the article 44.46(2), the statute would be meaningless. Appellant's interpretation of article 44.46(2) would read into the statute the very holding—service by an absolutely disqualified juror is "automatic" reversible error—the statute was plainly designed to overturn.

The plain language of article 44.46(2) requires that when the presence of an absolutely disqualified juror is not discovered or brought to the attention of the trial court until after the verdict is entered, the defendant is entitled to a new trial only if he demonstrates that the juror's service caused him significant harm beyond the mere fact of conviction. Appellant makes no attempt to show such harm in this cause. Point of error one is overruled.

### 4. Constitutionality of article 44.46

■ Appellant contends that article 44.46 is unconstitutional on its face. A facial challenge to the constitutionality of a statute is difficult to mount successfully because the challenger must establish that no set of circumstances exists under which the statute is valid. *Santikos v. State,* 836 S.W.2d 631, 633 (Tex.Crim.App.1992). It follows that to prevail on such a claim, the challenger must show that in its operation the statute is unconstitutional as applied to him in his situation. *Id.* That the statute may be unconstitutional as applied to others is not sufficient. *Id.*; *see also Cantu v. State,* 939 S.W.2d 627, 639 (Tex.Crim.App.1997); *Parent v. State,* 621 S.W.2d 796, 797 (Tex.Crim.App.1981); *Perez v. State,* 938 S.W.2d 761, 764 (Tex. App.—Austin 1997, pet. ref'd).

Appellant contends article 44.46 is incompatible with the Texas Constitution in four respects: it undermines the right to trial by a qualified jury, it violates the separation of powers, it prevents proper appellate review and thereby denies due course of law, and it precludes the effective assistance of counsel. We will address each of these contentions to determine whether article 44.46 was uncon-

stitutionally applied to appellant in this cause.

### a. Right to qualified jury

■ The Texas Constitution provides:

The right of trial by jury shall remain inviolate. The Legislature shall pass such laws as may be needed to regulate the same, and to maintain its purity and efficiency.

Tex. Const. art. I, § 15.

Laws shall be made to exclude from . . . serving on juries . . . those who may have been or shall hereafter be convicted of bribery, perjury, forgery, or other high crimes.

Tex. Const. art. XVI, § 2.

The Legislature shall prescribe by law the qualifications of grand and petit jurors. . . .

Tex. Const. art. XVI, § 19.

Appellant argues that by enacting article 44.46, the legislature violated its responsibility to maintain the purity of juries and created a procedural barrier to the enforcement of article XVI, section 2. Appellant refers us to the opinions in *R.R.E. v. Glenn*, 884 S.W.2d 189 (Tex.App.—Fort Worth 1994, writ denied), and *Hoffman v. State*, 922 S.W.2d 663 (Tex.App.—Waco 1996, pet. ref'd). Both of these opinions address the question whether a person convicted of a felony and placed on probation, and who thereafter successfully completes probation and has his conviction judicially set aside, may serve on a jury. These cases are both legally and factually distinguishable from the cause before us.

The application of article 44.46 to appellant in this cause clearly does not violate the terms of article XVI, section 2. Assuming that misdemeanor theft is a "high crime," the constitution bars from jury service only those persons who have been convicted of such a crime. The juror in this cause had not been convicted, but merely accused.

Whitman's disqualification from jury service did not derive from the constitution, but from articles 35.16 and 35.19. Those statutes were passed by the legislature pursuant to its broad constitutional authority to regulate the right of trial by jury and to prescribe the qualifications of jurors. Tex. Const. art. I, § 15 & art. XVI, § 19. Obviously, the authority to prescribe statutory disqualifications from jury service carries with it the authority to remove or modify those disqualifications, and to prescribe the procedures by which they are to be enforced. Article 44.46 did not deny appellant his right to trial by a qualified jury, but merely required him either to timely assert that right or to show that significant harm resulted from the disqualified juror's service.

### b. Separation of powers

■ The constitution forbids one department of the government from exercising any power properly attached to another, except when expressly authorized by the constitution. Tex. Const. art. II, § 1. Appellant argues that article 44.46 offends against this constitutional separation of powers by altering the burden of proof on the issue of harm arising from an error in the judicial branch. *See Armadillo Bail Bonds v. State*, 802 S.W.2d 237, 240 (Tex.Crim.App.1990) (holding unconstitutional statute requiring eighteen-month delay in entering judgment forfeiting bail bond).

The constitution expressly grants the legislature ultimate authority over judicial administration. Tex. Const. art. V, § 31; *Armadillo*, 802 S.W.2d at 240. The legislature is also given express constitutional authority to regulate the right to trial by jury. Art. I, § 15. Article 44.46 was enacted pursuant to these constitutional grants of authority. Under the circumstances, article 44.46 violates article II, § 1 only if the legislature, in the exercise of its constitutional authority, has so interfered with the judicial branch as to prevent the effective exercise of the latter branch's constitutionally assigned powers. *Armadillo*, 802 S.W.2d at 239.

■ The judicial power embraces the power to hear evidence, to decide the issues of fact raised by the pleadings, to decide the relevant questions of law, to render a final judgment on the facts and the law, and to execute the final judgment or sentence. *Id.* at 239–40. Article 44.46 does not interfere with any of these core judicial powers, but

merely prescribes the procedure by which article 35.19 is to be implemented. We find no violation of the separation of powers insofar as article 44.46 applies in this cause.

### c. Due course of law

■ Appellant argues that article 44.46(2) denies him the due course of law guaranteed by article I, § 19 of the Texas Constitution by precluding meaningful appellate review of violations of article 35.19. Appellant's argument, as we understand it, is that having statutorily prescribed the qualifications for jury service in articles 35.16 and 35.19, the legislature cannot prescribe the procedure by which those statutes are enforced by the courts. We have already rejected this argument in holding that article 44.46, as applied in this cause, is a lawful exercise of the legislature's constitutional authority to regulate trial by jury and to determine the qualifications of jurors.

Appellant does not persuade us that article 44.46(2) precludes meaningful appellate review. Most errors, even those of constitutional magnitude, must be preserved at trial in order to be raised on appeal. *See* Tex. R.App. P. 52(a). Article 44.46(2) is less onerous than this general rule, requiring only that a defendant who first raises the disqualification of a juror after verdict must show harm in order to obtain a new trial. The burden imposed by article 44.46(2) is no heavier than that imposed by statute on a defendant who raises charge error for the first time on appeal. Tex.Code Crim. Proc. Ann. art. 36.19 (West 1981); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1985) (opinion on rehearing).

■ Appellant contends that service by an absolutely disqualified juror is a "structural error" that requires reversal without regard to harm. *See Cain v. State*, 947 S.W.2d 262, 264 (Tex.Crim.App.1997); *Rey v. State*, 897 S.W.2d 333, 344–46 (Tex. Crim.App.1995). We disagree. A structural error is a constitutional error affecting the framework within which the trial proceeds, rather than simply an error in the trial process. *Rey*, 897 S.W.2d at 344 (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991)). A structural error prevents a trial from reliably serving its function as a vehicle for determining guilt or innocence. *Id.* As we have previously noted, jury service by a person accused of theft is a statutory, not a constitutional, error. Moreover, it is an error in the trial process that does not necessarily prevent the reliable determination of guilt or innocence.

### d. Denial of effective assistance of counsel

■ Finally, appellant contends article 44.46(2) conflicts with the constitutional right to effective assistance of counsel. U.S. Const. amends. VI, XIV; Tex. Const. art. I, § 10. Appellant says this is so because proof of harm arising from the service of an absolutely disqualified juror is impossible. Appellant refers us to Texas Rule of Criminal Evidence 606(b), which purports to prohibit inquiries into the jury's deliberations, or into the mind or emotions of any particular juror.

This contention does not speak to the question of whether article 44.46 is unconstitutional as applied to appellant. In his motion for new trial, appellant did not allege that Whitman's service on the jury influenced the course of the deliberations or had any effect on the verdict. Instead, appellant relied on his contention, which we have rejected in this opinion, that the mere fact of his conviction constituted significant harm as a matter of law. Under the circumstances, appellant cannot assert that his attorney was prevented, by rule 606(b) or otherwise, from demonstrating significant harm within the meaning of article 44.46. We do note, however, that rule 606(b) expressly permits testimony as to any matter relevant to the validity of the jury's verdict. *See Buentello v. State*, 826 S.W.2d 610, 614 (Tex.Crim.App. 1992); *see also R.R.E.*, 884 S.W.2d at 191 (evidence at new trial hearing showed that disqualified juror convinced other jurors to change votes).

Appellant has not demonstrated that article 44.46 is unconstitutional as applied to him in this cause. Point of error two is overruled.

## 5. Hearing on motion for new trial

Appellant contends the district court erred by failing to conduct a hearing on his motion for new trial. He also contends this Court erred by failing to grant his motions to abate the appeal for such a hearing.

A trial court abuses its discretion by failing to hold a hearing on a motion for new trial that raises matters that are not determinable from the record. *Reyes v. State*, 849 S.W.2d 812, 816 (Tex.Crim.App. 1993). A hearing is not required if the matters raised in the motion for new trial are determinable from the record, or if the motion and supporting affidavits are not sufficient to put the trial court on notice that reasonable grounds for a new trial may exist. *Jordan v. State*, 883 S.W.2d 664, 665 (Tex. Crim.App.1994); *Reyes*, 849 S.W.2d at 816.

Appellant alleged in his motion for new trial that an absolutely disqualified juror served on the jury that convicted him and that all the requisites of article 44.46 were satisfied. Alternatively, appellant challenged the constitutionality of article 44.46. We have already detailed the contents of the affidavits supporting the motion for new trial.

Appellant's motion for new trial raised only questions of law or matters that could be determined from the record. Whether appellant raised the juror's disqualification before verdict was entered as required by article 44.46(1) could be determined from the record. The motion for new trial and its supporting affidavits did not allege any facts relevant to the article 44.46(2) harm requirement, but instead alleged that appellant's conviction and sentence constituted significant harm as a matter of law. The constitutionality of article 44.46 was also a question of law. Thus, appellant's motion for new trial raised issues that could be determined by the court on the basis of the trial record and the pleadings. Because appellant's motion for new trial did not state facts that, if true, would entitle him to relief, the district court did not abuse its discretion by overruling the motion without a hearing. *Myers v. State*, 527 S.W.2d 307, 309 (Tex.Crim.App.1975). Point of error four is overruled.

For the same reason, this Court did not err by refusing to abate the appeal for a hearing on appellant's motion for new trial. We further note that appellant filed his abatement motions before the appellate briefs were received and before this Court was made aware of the issues to be presented on appeal. Piecemeal disposition of appeals pursuant to motions filed by the parties is not an acceptable substitute for considered decision following briefing and argument, as this appeal illustrates. Appellant's brief contains points of error relating to the admissibility of his confessions that, if sustained, would require reversal and moot his points of error regarding the disqualified juror. Had we granted appellant's motion to abate only later to reverse for an unrelated error, we would have wasted the district court's time and unnecessarily delayed the appeal. We will not abate an appeal and order an out-of-time motion for new trial hearing absent a clear showing that such relief is required. Appellant made no such showing in his abatement motions. Point of error five is overruled.

The judgment of conviction is affirmed.