In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-06-230 CR


____________________



MITCHELL EARL CLARK, JR., Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 252nd District Court 


Jefferson County, Texas


Trial Cause No. 97227






MEMORANDUM OPINION


 A jury found appellant Mitchell Earl Clark, Jr. guilty of murder. See Tex. Pen. Code
Ann. § 19.02(b)(1) (Vernon 2003). The jury determined Clark was a repeat felony offender
and sentenced him to seventy years in the Texas Department of Criminal Justice -
Institutional Division. 

 Clark presents five issues on appeal. He first argues the trial court abused its
discretion in denying him an oral hearing on his motion for new trial. Second, he states the
evidence is factually insufficient to support the conviction. He also contends the trial court
erred in failing to suppress any in-court identifications of him as the assailant. Next, he
maintains the trial court abused its discretion when it limited his closing argument to sixteen
minutes. Last, he asserts the trial court abused its discretion in admitting extraneous
evidence of gang affiliation during the punishment stage.

 "When an accused presents a motion for new trial raising matters not determinable
from the record, upon which the accused could be entitled to relief, the trial judge abuses his
discretion in failing to hold a hearing." Reyes v. State, 849 S.W.2d 812, 816 (Tex. Crim.
App. 1993). "[A] defendant need only assert reasonable grounds for relief which are not
determinable from the record in order to be entitled to a hearing." Jordan v. State, 883
S.W.2d 664, 665 (Tex. Crim. App. 1994). However, a trial court does not abuse its
discretion in overruling a motion for new trial without a hearing unless the motion and
supporting affidavits state facts that, if true, would entitle the defendant to a new trial. See
Hernandez v. State, 952 S.W.2d 59, 74 (Tex. App.--Austin 1997), vacated on other grounds,
957 S.W.2d 851 (Tex. Crim. App. 1998). When a trial court does not conduct a hearing on
a motion for new trial, an appellate court must determine whether the motion and affidavits
show reasonable grounds that would entitle a defendant to a hearing of the motion. See
Jordan, 883 S.W.2d at 665; Garcia v. State, 960 S.W.2d 329, 333 (Tex. App.--Corpus Christi
1997, no pet.); Sandoval v. State, 929 S.W.2d 34, 36 (Tex. App.--Corpus Christi 1996, pet.
ref'd).

 A hearing is not required if the matters raised in the motion for new trial are
determinable from the record, or if the motion and supporting affidavits are not sufficient to
put the trial court on notice that reasonable grounds for a new trial may exist. Jordan, 883
S.W.2d at 665; Reyes, 849 S.W.2d at 816. The grounds presented to the trial court in Clark's
Motion for New Trial included his contention that a disqualified juror served on the jury,
juror misconduct, alleged withholding of material evidence from Clark by the State, and the
wrongful exclusion of a 911 audio tape from evidence before the jury by the trial court. 
Clearly, a trial court's ruling on the admissibility of evidence is determinable from the record
and therefore, Clark has failed to show that the trial court abused its discretion in ruling upon
that issue without the necessity of an oral hearing. 

 In another point of his motion for new trial, Clark complains film allegedly seized
from his California residence by Los Angeles police in an unrelated matter was material
evidence withheld from him in this case. The motion for new trial states the film
"presumably" depicts Clark in California on the day of the murder. Clark attached the
"search warrant and affidavit" which allegedly resulted in the seizure of the film. Although
the affidavit relates to his allegation, it is not an affidavit "specifically showing the truth of
the grounds" of his allegation. See McIntire v. Texas, 698 S.W.2d 652, 658 (Tex. Crim. App.
1985). The attached inventory receipt from the search shows one roll of Kodak film was
confiscated, but the affidavit itself does not mention the specific film he complains was
withheld, or otherwise discuss the contents of the purported film. As a prerequisite to
obtaining a hearing on a motion for new trial, the motion for new trial must be supported by
affidavit, either of the accused or someone else specifically showing the truth of the grounds
of attack. Reyes, 849 S.W.2d at 816 (citing McIntire, 698 S.W.2d at 658); see also Bearden
v. State, 648 S.W.2d 688, 690 (Tex. Crim. App. 1983)(while the Code of Criminal Procedure
has never required that a motion for new trial be verified, the court has continually held that
without a supporting affidavit, a motion for new trial based on matters outside the record is
insufficient as a pleading). The affidavit is not required to "reflect every component legally
required to establish" relief, but the motion or affidavit must reflect that reasonable grounds
exist for relief to be granted. Reyes, 849 S.W.2d at 816 (citing McIntire, 698 S.W.2d at 658). 
Thus, the motion for new trial was defective and insufficient as a matter of law and we find
no abuse of discretion by the trial court in ruling without a hearing.

 Clark further complains in his motion for new trial that a disqualified juror served on
the jury. Clark alleges that Juror #32 had been convicted of attempted theft, and therefore,
was a disqualified juror. See Tex. Code Crim. Proc. Ann. arts. 35.16(a), 35.19 (Vernon
2006). Clark did not include a sworn affidavit from the juror in question, but in support of
this point relies solely upon his counsel's verification to the motion and unverified copies of
documents apparently downloaded from the web sites of the Texas Department of Public
Safety and Jefferson County Clerk's offices purporting to evidence a 1979 conviction for
misdemeanor attempted theft, attached to his motion for new trial. The disqualification issue
was not brought to the court's attention until after the verdict was entered and Clark
maintains he is entitled to a new trial because, in addition to the other issues identified in his
motion, a disqualified juror served during his trial.

 Article 35.19 of the Texas Code of Criminal Procedure provides for an absolute
disqualification from jury service, as "[n]o juror shall be impaneled when it appears that he
is subject to the second, third or fourth cause of challenge in article 35.16, though both
parties may consent." Id. at art. 35.19. Article 35.16 lists several reasons for challenges for
cause. Id. at art. 35.16. The second of the listed reasons is "[t]hat the juror has been
convicted of misdemeanor theft or a felony[.]" Id. A conviction for attempted misdemeanor
theft is not expressly included in the enumerated disqualifying offenses.

 Pursuant to Article 44.46(2), when the issue of an alleged disqualification is brought
to the trial court's attention after the verdict is entered, a conviction cannot be reversed on
appeal unless the defendant "makes a showing of significant harm by the service of the
disqualified juror." Tex. Code Crim. Proc. Ann. art. 44.46(2) (Vernon 2006). A
defendant's conviction and sentence does not alone constitute a showing of "significant
harm" required by article 44.46. State v. Read, 965 S.W.2d 74, 77 (Tex. App.--Austin 1998,
no pet.); Hernandez, 952 S.W.2d at 71. Instead, the record must demonstrate the defendant's
alleged substantial harm is directly attributable to the service of the objectionable juror. See,
e.g. Perez v. State, 11 S.W.3d 218, 221 (Tex. Crim. App. 2000); Ristoff v. State, 985 S.W.2d
623, 623-24 (Tex. App.--Houston [1st Dist.] 1999, no pet.).

 Neither Clark's motion for new trial nor any supporting affidavit alleged any facts
establishing a disqualifying conviction of misdemeanor theft or any facts relevant to the
article 44.46(2) harm requirement. On appeal, Clark argues that due to Juror #32's failure
to disclose his criminal history in response to questions on the juror information card and
direct questioning during voir dire, he was not able to intelligently exercise his peremptory
challenges or receive a fair trial. This argument was not presented to the trial court. Clark
did not present a reasonable ground for relief. Because Clark's motion for new trial did not
state facts that, if true, would entitle him to relief, the trial court did not abuse its discretion
by overruling Clark's motion for new trial without a hearing. See Hernandez, 952 S.W.2d
at 74. 

 Finally, Clark alleges in his motion that he is entitled to a new trial because Juror #29
provided sworn testimony in her attached affidavit that the jury considered during its
deliberations (1) Clark's failure to testify, and (2) the effect of parole on Clark's sentence. 
Rule 606(b) of the Texas Rules of Evidence provides that, "[u]pon an inquiry into the
validity of a verdict or indictment, a juror may not testify as to any matter or statement
occurring during the jury's deliberations, or to the effect of anything on any juror's mind or
emotions or mental processes, as influencing any juror's assent to or dissent from the verdict
or indictment." Tex. R. Evid. 606(b). However, Rule 606(b) also provides that "a juror may
testify: (1) whether any outside influence was improperly brought to bear upon any juror;
or (2) to rebut a claim that the juror was not qualified to serve." Id. An "outside influence"
is something outside of both the jury room and the juror. White v. State, 225 S.W.3d 571,
574 (Tex. Crim. App. 2007). Because the affidavit presents no evidence of any outside
influence, the trial court may have properly disregarded it without an oral hearing. Tex. R.
Evid. 606(b). The trial court did not abuse its discretion in failing to hold a hearing on
Clark's motion for new trial. We overrule Clark's first issue.

 Second, Clark argues the evidence is factually insufficient to support the conviction. 
In conducting a factual sufficiency review, we consider all of the evidence in a neutral light
to determine whether the evidence supporting the verdict is too weak to support the finding
of guilt beyond a reasonable doubt, or if the evidence of guilt, although adequate if
considered alone, is so greatly outweighed by the contrary proof that the jury's verdict is not
rationally justified. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000); see also
Watson v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006).

 SchKeitha Simon testified that during the early morning hours of December 15, 2002,
she was leaving the Club Signature in Beaumont. She got into the front-passenger seat of
the Dodge Intrepid driven by "C-Bane," with "Flash" in the backseat. The Intrepid had
California license plates. As they were trying to leave, a man walked up to the Intrepid and
said, "[G]ive me the gun." "C-Bane" opened the console, and the man reached across Simon
and grabbed a gun out of the console. Simon then saw the man approach Vincent Lockett,
a bouncer at the club. She saw the man "have a couple of words" with Lockett and then
shoot Lockett. Lockett fell and the man shot him again. After unsuccessful attempts to leave
the scene on foot and by another vehicle, the assailant got in the backseat of the Intrepid. 
Shots were fired at the Intrepid as it left the scene, and the Intrepid proceeded across town
to the Maida Apartments. The Intrepid's four occupants exited the car and talked around the
car for about twenty minutes. A van came and they all four got into the van that took them
to the Autumn Cove Apartments, about five minutes from the Maida Apartments. The van
dropped off the assailant and "Flash" at the Autumn Cove Apartments, and then took "C-Bane" and Simon to a hotel. Simon identified Clark at trial as the man who shot Lockett. 

 At the time of trial, Simon had pending drug charges against her. She stated that
around the date of the murder "Flash" wore his hair in braids. She did not go to the police
station until police approached her months after the shooting. She identified from a stack of
pictures "C-Bane," Felix Neal, and Clark as people at the scene. She explained to Detective
Tamayo that she and "C-Bane" had dated on and off and that she knew Felix Neal from being
around Beaumont. She also told Detective Tamayo that Neal was in the backseat. She
identified Clark as Lockett's assailant. She testified that while she has been held at the
Jefferson County Jail, Clark has sent her affidavits through "jail mail" for her to sign stating
that she identified the wrong person, but she refused. 

 Troy Subject testified that he and Lockett were working together as bouncers at Club
Signature on the early morning hours of December 15, 2002. Around 2 a.m., Subject walked
out of the front of the club and saw Lockett talking with another man. Subject walked by and
slowed down to listen to make sure there was no trouble, and then continued walking to his
car. He testified that when he walked by he looked at the man talking to Lockett. Subject
started his car because it was cold, and went back into the club. He heard three gunshots and
he ran back outside. He saw Lockett laying on the ground and Lockett said, "He shot me." 
The man Subject saw Lockett talking to earlier was running away from the club trying to find
a ride. The man jumped into the backseat of a dark-colored Dodge. Subject shot at the car. 
The people in the Dodge were trying to get out of the parking lot and the Dodge hit a car on
the way out. Subject identified Clark as the man he saw talking to Lockett right before
Lockett was shot, and as the man he saw running away and jumping into the Dodge. 

 When the police arrived, Subject did not tell them he shot at the car. Later, he told
the police that he had shot at the car and brought the .45 to one of the detectives. He picked
out Clark from a police photo line-up about a month later. Although Subject had stated in
his statement to the police the day after the shooting that he thought the man who shot
Lockett "had braids," he stated at trial that what he meant was "that the guy didn't have long
hair. . . . If he had long hair, it was braided up." 

 Sean Withers, Sr. testified he was in Club Signature's parking lot around closing time
on December 15, 2002. He heard gunshots and saw a man laying on the ground and another
man standing over him with a gun. The man tried unsuccessfully to shoot the victim again. 
The assailant ran out of the parking lot looking for a ride. He ran back into the gate and got
into the backseat of a Dodge with either a California or Louisiana license plate. The Dodge
took off in a hurry, hit another car, and kept on going. On three occasions after the murder,
Withers was unable to identify the assailant from a photo line-up at the police station. At
trial, Withers identified Clark as the assailant. Withers did not know Lockett personally, but
had seen him as a bouncer at the club before. 

 The jury heard evidence of how the crime scene was secured and evidence collected. 
The shells found by the door of Club Signature and by the victim were .40 caliber shells, and
the shells found by the gate of the parking lot were .45 caliber shells. Three .40 caliber
shells, five .45 caliber shells, and one spent bullet were retrieved from the scene. A damaged
Dodge vehicle with California plates and holes in it was recovered from the Maida
apartments. The only match to fingerprints pulled from the Dodge was Felix Neal, and those
fingerprints were from rental papers in the car. Detectives also retrieved from the car a
traffic ticket issued on December 14, 2002, to Felix Neal. A cigarette butt retrieved from the
Dodge had DNA from a female on it. DNA testing of a blood stain from the steering wheel
of the Dodge showed that Clark would not be excluded as a contributor, but that Lockett
could be excluded as a contributor. Hair recovered from the front passenger seat of the
Dodge was analyzed and it was determined it could have been contributed by Clark. The
autopsy revealed Lockett suffered two gunshot wounds in the back, with the cause of death
being the upper gunshot wound where the bullet passed through Lockett's heart.

 Jeffrey Theriot, a major at the Jefferson County Correctional Facility where Clark and
Simon were incarcerated, testified that it would be "very unlikely" that, considering the
security measures in place, a male charged with murder housed in the Jefferson County
Correctional Facility could approach a female inmate in order to have her sign affidavits. 
Theriot did acknowledge that if an inmate wanted to get mail to another inmate, they could
send mail out to a family member and have the family member repackage it and send it to the
inmate it was intended for. 

 Detective Jesus Tamayo, lead investigator on the case, testified that Felix Santos Neal
was a person of interest early in the investigation. He stated that the mother of Neal's baby
lived in the Autumn Cove Apartments around the time of Lockett's murder. The gun used
to murder Lockett was never recovered. Tamayo identified Neal in Neal's prior mug-shots
and described him as wearing braids in his hair. 

 A neutral review of the entire record does not demonstrate that the proof of guilt is
so obviously weak as to undermine the confidence of the jury's determination, nor does it
demonstrate that the proof of guilt is greatly outweighed by contrary proof. The evidence is
factually sufficient to support the verdict. We overrule issue two.

 In his third issue, Clark maintains the trial court erred in failing to grant his motion
to suppress any eyewitnesses' in-court identification of him as the assailant. He specifically
challenges the reliability of Subject's, Withers', and Simon's in-court identifications of him. 
Although Clark requested to take Simon and Subject on voir dire, he did not object to their
in-court identification when the witnesses identified him as the assailant, nor did re-urge his
motion to suppress. Therefore, as to Subject's and Simon's in-court identifications of Clark,
Clark failed to preserve error. Tex. R. App. P. 33.1(a). As for Withers' in-court
identification, Clark did not object to Withers' in-court identification and on appeal,
concedes he does not claim a suggestive pretrial identification procedure. After Withers' in-court identification of Clark as the assailant, Clark cross-examined Withers' and then re-urged his motion to suppress, which the trial court denied. Because Clark's motion to
suppress came after Withers' in-court identification on direct examination and not until after
cross-examination, Clark did not preserve error with a timely motion. Clark's third issue is
overruled.

 Clark also argues the trial court abused its discretion in limiting his closing argument
to sixteen minutes. Although trial courts have broad discretion in determining the length of
arguments during a trial, the restrictions upon the parties by the trial court must be
reasonable. Dang v. State, 154 S.W.3d 616, 619-20 (Tex. Crim. App. 2005). We should
consider, but are not limited to consider, the following non-exclusive factors in determining
whether Clark was allotted a reasonable amount of time for closing argument: (1) the
quantity of the evidence, (2) the duration of the trial, (3) conflicts in the testimony, (4) the
seriousness of the offense, (5) the complexity of the case, (6) whether counsel used the time
allotted efficiently, and (7) whether counsel set out what issues were not discussed because
of the time limitation. Id. at 621. 

 We consider the first three factors together. The record indicates that the State
presented eight witnesses and Clark presented two witnesses during the two-day trial. The
record indicates that the relevant conflicts in testimony addressed by defense counsel's cross-examination included whether the assailant wore braids in his hair, whether DNA evidence
linked Clark to the murder, and the reliability of the in-court identifications of Clark as the
assailant. Although the charge was a serious one--murder--the case was not a complex case. 
 Clark argues on appeal that he needed additional time to address the "misidentification
and complex scientific analysis of fingerprints, DNA, and hair." He also needed to
emphasize that the trial witnesses only provide a small picture of the investigation, that the
words "could not be excluded" can be misleading, that certain factors could have affected
the witnesses' memory, that reasonable doubt can exist despite the trial witnesses' testimony,
and that a whole new case can be established against Felix Neal. The trial court has broad
discretion regarding the order of the trial. A defendant should be allotted a reasonable time
to present a closing argument. However, applying the factors as set forth in Dang to the
record before us, we cannot say the trial court abused its discretion by limiting the time for
closing arguments to sixteen minutes. We overrule issue four.

 In his last issue, Clark argues the trial court abused its discretion while admitting
extraneous acts of gang violence during the punishment stage. At the punishment phase of
the trial, evidence regarding a defendant's character is relevant. See Tex. Code Crim. Proc.
Ann. art. 37.07, § 3(a) (Vernon Supp. 2007). Evidence of gang membership is relevant to
show the character of the defendant. Beasley v. State, 902 S.W.2d 452, 456 (Tex. Crim. App.
1995). 

 Detective Jesus Gonzalez, assigned to the Central Detective Gang Enforcement Unit
with the Los Angeles Police Department, testified during the punishment stage. He testified
that he knew Clark and that based on his experience in the Gang Task Force, he identified
Clark as a member of the sub-clique 59 Hoover gang. He explained that the gang commits
violent crimes in order to carry out their criminal enterprises or to protect their gang
membership. At the State's request, the trial court directed Clark to remove his shirt and
Detective Gonzalez explained to the jury how Clark's tattoos related to the gang. Gonzalez
testified that he believed that Lockett's murder was committed in the furtherance of the
Hoover Gang.

 Because the evidence of Clark's gang membership is relevant to his character, we
must determine whether the evidence was more prejudicial than probative. See Tex. R. Evid.
403; Jones v. State, 944 S.W.2d 642, 653 (Tex. Crim. App. 1996). Under Rule 403 of the
Texas Rules of Evidence, a trial court may exclude relevant evidence if its probative value
is substantially outweighed by the danger of unfair prejudice. See Tex. R. Evid. 403. Rule
403 only applies where a clear disparity exists between the offered evidence's degree of
prejudice and its probative value. See Jones, 944 S.W.2d at 653. Upon this record, we
cannot say that the probative value of the evidence of Clark's gang membership was
substantially outweighed by its prejudice. We overrule Clark's fifth issue. The trial court's
judgment is affirmed.

 AFFIRMED.

 
 __________________________________

 CHARLES KREGER

 Justice


Submitted on April 26, 2007

Opinion Delivered February 27, 2008

Do not publish


Before McKeithen, C.J., Gaultney and Kreger, JJ.