# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00791-CR

**Guillermo Ponce Ramirez, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 119TH JUDICIAL DISTRICT
### NO. B-02-0313-S, HONORABLE BARBARA L. WALTHER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Guillermo Ponce Ramirez appeals from his conviction on two counts of aggravated sexual assault of a child under the age of fourteen. *See* Tex. Pen. Code § 22.021 (West 2003). The jury found appellant guilty of both counts and assessed punishment at imprisonment for thirty years in the Texas Department of Criminal Justice-Institutional Division. In two issues on appeal, appellant contends that his motion for new trial based on newly discovered evidence should have been granted and that the evidence is insufficient to support his conviction. We affirm the conviction.

**Factual and Procedural Background**

Nicola Buhmann, a sexual assault nurse examiner with Shannon Hospital in San Angelo, testified that she examined T.M., appellant's stepdaughter, in March 2002. She testified that she first took a history from the patient in order to determine if there was any risk for a sexually transmitted disease or any risk of pregnancy. She testified that T.M. described both vaginal and anal penetration, with bleeding, that happened "for the first time" when appellant accosted her in the bathroom of their house on Harris Street in San Angelo. It also happened after they moved away from that residence. Buhmann found a well-healed 5mm. tear on the child's hymen that was consistent with penetration by a male sexual organ. She found no signs of injury to the anus, but she testified that it was not uncommon to fail to find any signs of injury, even if penetration had occurred.

Donna Ponce, T.M.'s mother, testified that she did not believe T.M. at first, and only talked to authorities three weeks after T.M.'s outcry because "they" [unspecified] "called the law" and she would have gotten in trouble if she had not talked. Ponce did not believe T.M. because T.M. had a bad temper and "liked to get her own way." Ponce said that when T.M. told her about the events, T.M. said she had not spoken out earlier because appellant threatened to shoot T.M. However, Ponce claimed that appellant only had a BB gun. Ponce said that T.M. told her about events happening in the fall, which had to have been the fall of 1999, because they moved from Harris Street after appellant took a job at the Viss Dairy in May of 2000.

Ponce admitted that she was living rent-free with her husband's brother in Cleburne and only made one hundred dollars every two weeks from a part-time cleaning job to support herself,

2

T.M. and T.M.'s two siblings. During the trial, she and the children were staying with appellant's sister. She said she and her husband never talked about the events, just about "getting him out" so things could return to normal. After they had been living in Cleburne for several months, T.M. came to her and admitted that the allegations were all lies that she made up to get even with appellant for punishing her. Ponce took T.M. to the district attorney's office so that T.M. could tell the district attorney that she had lied.

T.M. testified briefly. She said that she made up the story. When asked if she had ever had sexual intercourse with appellant, either vaginal or anal, she answered, "Never." She explained the hymenal tear as having happened when she "sat on a chair."

Angie Voss, a Child Protective Services supervisor, first interviewed T.M., who recounted the assault. She said that child victims were not put under oath before the interview, but were cautioned to tell the truth. She also testified that it was not unusual for child victims to recant. In particular, children ages ten to twelve are old enough to understand the consequences of their report for their family life and are often eager to try to "fix" matters by recanting in an effort to "restore" their family life as it was before they made an outcry. T.M. was approximately ten when the events happened; she was almost thirteen at trial.

Appellant testified briefly. He denied ever having sexual contact with T.M. He also said that he married T.M.'s mother when T.M. was three to six months old and T.M.'s mother was fourteen. He had always provided the main financial support for the family.

The State recalled Buhmann, who testified that the hymenal tear could not have been caused by sitting on a chair, as described by T.M. On cross-examination, she said it was possible

3

for a woman to have sexual intercourse more than once and never display any tearing or have multiple tears as a result of one act. She admitted that the tear could have been caused by something other than a penis, such as a candle or other object.

At the punishment phase of trial, Tom Green County Sheriff's Deputy Joe Ybarra testified that he answered a domestic disturbance call at the Ramirez residence on FM 2105 in March 2002. Ponce and the children met him at the door, crying and appearing upset. Ponce had a red mark in her left eye and cheek area; appellant, who was in a bedroom, had scratches. The deputy was able to determine that two children had been assaulted as well.[1]

After the judgment was signed, a timely motion for new trial was filed. On day seventy, appellant filed an amended motion for new trial based on newly discovered evidence, with an affidavit showing the evidence on which appellant relied. The motion was overruled by operation of law. On appeal, appellant brings two issues: (1) the trial court abused its discretion in failing to conduct a hearing on his first amended motion for new trial and in failing to grant the motion, even without a hearing; and (2) the trial court erred in holding the evidence sufficient to sustain a conviction.

## Discussion

### *Motion for New Trial*

In his first issue, appellant contends that the trial court abused its discretion in failing to hold a hearing on his amended motion for new trial and in overruling the motion. Appellant filed

---

[1] The two children are not identified in the record. Attempts to elicit details about what was said to the deputy at the time were denied admission as hearsay.

a motion and amended motion for new trial. However, a motion for new trial must be "presented" to the trial court within ten days of its filing, or in the court's discretion, within seventy-five days from the day when the court imposes sentence in open court. Tex. R. App. P. 21.6. "Presentment" means that the record must show the movant for new trial sustained the burden of actually delivering the motion for new trial to the trial court or otherwise bringing the motion to the attention or actual notice of the trial court. *Carranza v. State*, 960 S.W.2d 76, 79 (Tex. Crim. App. 1998); *Butler v. State*, 6 S.W.3d 636, 640 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd). "Presentment" may be evidenced by the judge's signature or notation on a proposed order or by a hearing date set on the docket. *Carranza*, 960 S.W.2d at 79; *Butler*, 6 S.W.3d at 640. Mere filing of a motion for new trial does not adequately present the motion to the court. *See Carranza*, 960 S.W.2d at 78.

In this case, the record reflects only the filing of the motion and amended motion for new trial. There is no docket entry showing a hearing date, or request for hearing. There is no ruling by the court. Accordingly, appellant waived a hearing. Even assuming appellant did not waive the hearing, the court did not abuse its discretion in overruling appellant's motion.

If a motion for new trial raises matters not determinable from the record, upon which the accused could be entitled to relief, the trial judge abuses his discretion in failing to hold a hearing. *Reyes v. State*, 849 S.W.2d 812, 816 (Tex. Crim. App. 1993); *Scaggs v. State*, 18 S.W.3d 277, 281 (Tex. App.—Austin 2000, pet. ref'd). A defendant need only assert reasonable grounds for relief which are not determinable from the record in order to be entitled to a hearing. *Jordan v. State*, 883 S.W.2d 664, 665 (Tex. Crim. App. 1994); *Scaggs*, 18 S.W.3d at 281. However, a trial court does not abuse its discretion in overruling a motion for new trial without a hearing unless the

5

motion and supporting affidavits state facts that, if true, would entitle the defendant to a new trial. *See Hernandez v. State*, 952 S.W.2d 59, 74 (Tex. App.—Austin 1997), *vacated and remanded on other grounds,* 957 S.W.2d 851, 852 (Tex. Crim. App. 1998). When a trial court does not conduct a hearing on a motion for new trial, an appellate court must determine whether the motion and affidavits show reasonable grounds that would entitle a defendant to a hearing on the motion. See *Jordan*, 883 S.W.2d at 665; *Scaggs*, 18 S.W.3d at 281.

Appellant notes that in the affidavit attached to the motion for new trial, T.M. admits having sexual intercourse with a certain named individual, about whom no details are given.[2] He argues that this affidavit contains facts that would have provided the jury with a more credible alternative explanation for the hymenal tear than that offered by T.M. at trial. The part of the affidavit on which appellant relies is:

> 3. Further, I now want to state that the "tear in my hymen" must have been caused when I sexual intercourse with Frankie Rameriz in about September or October, 2000, at the Dairy where my step-father, GUILLERMO PONCE RAMEREZ [sic], worked. The aforementioned statements concerning my sexual relations with Frankie Rameriz have <u>never</u> been admitted by me to any one prior to now and that is why there was no evidence concerning those relations before or during the Jury Trial in the case in August, 2002, and I am now disclosing these sexual relationships with Frankie Rameriz so that hopefully, the Court will believe me when I state in this Affidavit that my step-father, GUILLERMO PONCE RAMIREZ, never had sexual intercourse with me.

---

[2] The relationship with Frankie Rameriz is the only new evidence that appellant offers as support for his motion for new trial.

The court could have had credibility concerns about the averments in the affidavit.[3] The affidavit refers to an act of intercourse occurring in September or October of 2000. The indictment referred to an act "on or about" October 15, 2000. However, T.M. testified that these acts "first" occurred in the house on Harris Street. She also said the acts continued after their move. Although some dates were a little hazy, appellant's mother was clear that they moved from Harris Street in May of 2000. Therefore, the first alleged assault by appellant on T.M. by appellant happened *before* the "admitted" intercourse with Frankie Rameriz. Even if the jury were to consider this fact, there was evidence from Buhmann that could have cast doubt about the possible lack of reliability of the presence of a tear as indicative of intercourse. Buhmann also agreed with appellant's observation that the tear could have been caused by an object. Finally, the jury could have concluded that after the assault by appellant, T.M. began to "act out" by engaging in inappropriate behavior. Appellant has not shown that the "new facts" would make a difference in the outcome.

Appellant has not shown that the matters raised were not determinable from the record. The record shows a recantation on T.M.'s part—she directly denied ever having intercourse with appellant. It shows her attempt at an alternative explanation for the physical evidence, and defense counsel's examination of Buhmann designed to suggest that T.M. might have been experimenting with a penetration-type object. The court knew that the jury had heard evidence

---

[3] The affidavit begins with disclaimers of any pressure being exerted by appellant's family. It also uses "anatomically correct" language that is very different than the language T.M. used in her outcry statement.

concerning the recantation. The jury also heard evidence that would have allowed it to conclude that under the circumstances of dependency, limited education, and living with appellant's family, T.M. had been pressured to change her story. The jury could have chosen to believe the recantation but did not. Ultimately, the affidavit is a further attack on T.M.'s credibility in her initial outcry statement. Finally, the statement, if believed, might provide an alternative explanation for the hymenal tear, but is not relevant to the allegations of anal intercourse, because there was no physical evidence. Appellant has not shown facts, that if true, would entitle him to a new trial. *See Hernandez*, 952 S.W.2d at 74. The court did not abuse its discretion in failing to hold a hearing or in allowing the motion to be overruled by the operation of law. *See Reyes*, 849 S.W.2d at 812. We overrule appellant's first issue.

### Sufficiency of the Evidence

In his second issue, appellant challenges the sufficiency of the evidence.[4] The standard for reviewing the legal sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the jury's verdict, any rational trier of fact could have found beyond a reasonable doubt all the essential elements of the offense charged. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Lane v. State*, 933 S.W.2d 504, 507 (Tex. Crim. App. 1996). All the evidence that

---

[4] Although appellant appears to raise only factual sufficiency in his argument, the relief requested (acquittal, or in the alternative, remand for new trial) is consistent with both a legal and factual sufficiency challenge. Accordingly, in the interest of justice, we review both aspects.

8

the jury was permitted to consider properly or improperly must be taken into account in determining the legal sufficiency of the evidence. *Garcia v. State*, 919 S.W.2d 370, 378 (Tex. Crim. App. 1994); *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). On appeal, we do not reevaluate the credibility of the witnesses or realign, disregard, or weigh the evidence. *Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992). Every fact need not point directly and independently to the defendant's guilt. *Vanderbilt v. State*, 629 S.W.2d 709, 716 (Tex. Crim. App. 1981). A conclusion of guilt can rest on the combined and cumulative force of all incriminating circumstances. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001); *Vanderbilt*, 629 S.W.2d at 716. The standard of review is the same for both direct and circumstantial evidence cases. *Kutzner v. State*, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999); *Green v. State*, 840 S.W.2d 394, 401 (Tex. Crim. App. 1992). Circumstantial evidence, by itself, may be enough to support the jury's verdict. *Kutzner*, 994 S.W.2d at 184.

Appellant admits that, whether a child testifies or not, the outcry statement is sufficient to convict. *See Rodriguez v. State*, 819 S.W.2d 871, 872-73 (Tex. Crim. App. 1991). Further, a jury does not have to accept a recantation, even one supported by oath in an affidavit. *See Banda v. State*, 727 S.W.2d 679, 682 (Tex. App.—Austin 1987, no pet.). The jury may disbelieve the later statement and accept the earlier testimony as true. *Id*. Accordingly, viewing the evidence in the light most favorable to the verdict, a rational trier of fact could have found beyond a reasonable doubt all the essential elements of the offense charged. *See Jackson*, 443 U.S. at 319. We conclude that the evidence was legally sufficient.

To determine factual sufficiency, we view the evidence in a neutral light and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Johnson*, 23 S.W.3d at 7. We must review the evidence weighed by the jury tending to prove the existence of the elemental fact in dispute and compare it to the evidence tending to disprove that fact. *Id.* The appellate court may find either that the State's proof of guilt was so obviously weak as to undermine confidence in the jury's determination or that the finding of guilt was against the great weight and preponderance of the evidence. *Id.* at 11. When the defendant proffers contrary evidence, we consider whether the proof of guilt, although adequate if taken alone, is greatly outweighed by the defendant's evidence. *Id.* A factual sufficiency review must be appropriately deferential to avoid substituting our judgment for that of the jury. *Jones v. State*, 944 S.W.2d 642, 648 (Tex. Crim. App. 1996). Unless the available record clearly indicates a different result is appropriate, an appellate court must defer to the jury's determination concerning what weight to give to contradictory testimonial evidence because resolution often turns on an evaluation of credibility and demeanor. *Johnson*, 23 S.W.3d at 8. We are not free to reweigh the evidence, but must exercise our jurisdiction only to prevent a manifestly unjust result. *Id.*

Appellant in essence asks us to re-determine the credibility of the complaining witness. He says that the explanation she offered at trial (sitting on a chair) was that of a twelve-year-old who did not want her mother to know she had had sexual intercourse with a boy. He further contends that the domestic disturbance at the home in March 2002 created much turmoil in the family, and the fear and anger that T.M. felt provided another reason for fabricating the allegations against appellant. The jury had before it T.M.'s direct testimony that she made up her allegations.

10

The jury also had in front of it much evidence to explain the recantation. The jurors heard testimony from an experienced CPS supervisor about recantations being common and the psychology underlying the recantations. It had evidence concerning the severe economic stress placed on the family because of appellant's mother's dependency on appellant. They knew that T.M. had been living with appellant's brother. The jurors chose to believe T.M.'s initial version of events, as was their prerogative. *See Banda*, 727 S.W.2d at 682. The record does not clearly indicate that a different result is appropriate; accordingly, we defer to the jury's determination about what weight to give to the contradictory testimonial evidence because they were in a position to judge the credibility and demeanor of the witnesses. *See Johnson*, 23 S.W.2d at 8. Viewing the evidence in a neutral light, but not re-weighing the evidence, we conclude it is factually sufficient.[5]

---

[5] Appellant relies on *Ex parte Elizondo*, 947 S.W.2d 202 (Tex. Crim. App. 1996) and *Ex parte Tuley*, 2002 Tex. Crim. App. LEXIS 239 (Tex. Crim. App. Dec. 18, 2002) as supporting his argument for a new trial based on factually insufficient evidence. Even ignoring any differences in the review of the evidence supporting a claim of actual innocence on a petition for habeas corpus relief from the review of the evidence on direct appeal, the cases are factually distinguishable. *See Elizondo*, 947 S.W.2d at 208-09. *Elizondo* involved a recantation by adults of their testimony at trial as juveniles. The recantation was never in front of the jury. *Id*. at 209. *Tuley* involved a recantation by the victim several years after the trial, supported by affidavits from her boyfriend and another friend to the effect that the complaining witness had repeatedly recanted. 2002 Tex. Crim. App. LEXIS 239 at *18. Although there had been contradictory evidence at trial, the post-trial recantation was, for the first time, an unequivocal statement that the defendant did not sexually assault the victim, *i.e.*, support for a claim of actual innocence for the first time. *Id*. at *19-21. In the current case, T.M.'s recantation was in evidence at trial in the form of direct testimony that appellant never had either vaginal or anal intercourse with her. T.M. did not merely "waffle" or become uncertain under cross-examination; her only trial testimony was the recantation. Accordingly, the jury had before it evidence of actual innocence on appellant's part and rejected that evidence.

## Conclusion

We have overruled both of appellant's issues presented.  We affirm his conviction.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Kidd and Patterson

Affirmed

Filed:   August 14, 2003

Do Not Publish